# EXHIBIT 1

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**Electronically FILED by
Superior Court of California,
County of Los Angeles
3/07/2025 10:07 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Cordon, Deputy Clerk**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TICKETMASTER, LLC; and LIVE NATION ENTERTAINMENT, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SHAWN ABBOTT; MARSHALL ALTIER; KALEN COOPER; EUGENE JO, individually and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Spring Street Courthouse

312 N Spring St, Los Angeles, 90012

CASE NUMBER:
*(Número del Caso):*
25STCV06613

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
CALEB MARKER, 6420 Wilshire Blvd., Suite 1080, Los Angeles, (877) 500-8780

DATE: 03/07/2025                Clerk, by    G. Cordon                    , Deputy
*(Fecha)*   David W. Slayton, Executive Officer/Clerk of Court *(Secretario)*                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify):* TICKETMASTER, LLC; and LIVE NATION ENTERTAINMENT, INC.
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

CALEB MARKER (SBN 269721)
caleb.marker@zimmreed.com
JESSICA LIU (SBN 358713)
jessica.liu@zimmreed.com
**ZIMMERMAN REED LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, California 90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781

*Attorneys for Plaintiffs*

**Electronically FILED by
Superior Court of California,
County of Los Angeles
3/07/2025 10:07 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Cordon, Deputy Clerk**

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

SHAWN ABBOTT; MARSHALL ALTIER; KALEN COOPER; EUGENE JO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TICKETMASTER, LLC; and LIVE NATION ENTERTAINMENT, INC.

Defendants.

CASE NO.: 25STCV06613

**COMPLAINT**

[CLASS ACTION]

1. Violation of New York Arts and Cultural Affairs Law § 25.07(4).

(Demand for Jury Trial)

Plaintiffs Shawn Abbott, Marshall Altier, Kalen Cooper, and Eugene Jo (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class Members"), by and through their undersigned counsel, bring this class action complaint against Defendants Live Nation Entertainment, Inc. ("Live Nation") and its subsidiary company Ticketmaster, LLC ("Ticketmaster") (collectively "Defendants"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## <u>INTRODUCTION</u>

1.    This case challenges Defendants' common conduct of improperly charging consumers on their websites in violation of applicable provisions of the New York Arts and Cultural Affairs Law, by not displaying the total ticket cost and all fees on the initial ticket listing and selection page.  Rather, the

higher total ticket costs, including all ancillary fees, are only disclosed on subsequent pages on Defendants' websites that are accessible only after the consumer selects a specific available ticket for purchase. Such conduct violates New York Arts and Cultural Affairs Law, §25.07(4) and/or other laws.

2. When ticket purchasers visit Defendants' website https://ticketmaster.com or www.livenation.com ("Website") to buy an admission ticket to an event in New York state, they are initially quoted one price, only to later be shown the true total ticket price, which is higher and includes additional "Fees", including but not limited to an order processing fee.

3. These added fees and their specific amounts are only presented *after* consumers select their ticket option and pass through subsequent screens in the purchase process.

4. In an effort to stop this type of business practice, New York State passed the Arts and Cultural Affairs Law, which provides that a "platform that facilitates the sale or resale of the tickets… shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket." § 25.07(4). Specifically, the statute requires that the "disclosure of the total cost and fees shall be displayed in the ticket listing ***prior*** to the ticket being selected for purchase." *Id*. (emphasis added). § 25.07(4). Section 25.07(4) further states that "***[t]he price of the ticket shall not increase during the purchase process***." *Id*. (emphasis added). This latest version of the law went into effect August 29, 2022.[1]

5. Arts and Cultural Affairs Law § 25.07(4) provides that a "platform that facilitates the sale or resale of tickets… shall disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser." *Id*.

6. Plaintiffs were subjected to the above-described practices and injured by Defendants' conduct, in violation of § 25.07(4), when they purchased tickets to an event in New York state from Defendants. This occurred when Plaintiffs viewed tickets offered for sale on Defendants' website that had one price depicted on the first screen listing available tickets for sale, only to have the charge rise after they selected particular tickets on subsequent screens required to finalize the purchase process.

---

[1] *See* N.Y. Arts & Cult. Aff. Law § 25.07.

7.     As a result of Defendants' failure to adhere to these disclosure standards, Plaintiffs seek relief in this action individually, and on behalf of all other ticket purchasers of Defendants for statutory damages in the amount of fifty dollars per violation[2], reasonable attorneys' costs and fees, and injunctive relief under New York Arts and Cultural Affair Law § 25.33 as well as all other relief that may be just and equitable in the circumstances.   As the practices described within are continuing and ongoing, injunctive relief (both private injunctive relief and public injunctive relief) is both appropriate and necessary to protect the members of class and future consumers within the general public from being harmed from the practices complained of in the future and incurring additional injuries.   Plaintiffs and members of the class are likely to attempt to engage in ticket transactions in the future and Defendants' improper price disclosures as described herein should be modified and corrected to avoid continuation of the still ongoing practices now complained of.

**PARTIES**

8.     Plaintiff Shawn Abbott ("Abbott") is an individual consumer who, at all times material hereto, was a resident of the State of California. Abbott is a resident of Palm Desert, California.

9.     Since August 29, 2022, Abbott has purchased approximately 10-12 tickets from Ticketmaster to events that took place in New York state. For instance, she recalls purchasing tickets to various U.S. Open Tennis Tournament events at Arthur Ashe Stadium, Louis Armstrong Stadium, Grounds Pass, and Billie Jean King.

10.     Abbott has an account with Ticketmaster and/or Live Nation that she used to purchase tickets to events in New York state since August 29, 2022. Her Ticketmaster and/or Live Nation accounts should show the tickets that she has purchased and ancillary fees imposed.

11.     Plaintiff Marshall Altier ("Altier") is an individual consumer who, at all times material hereto, was a resident of the State of California. Altier is a resident of San Diego, California.

12.     Since August 29, 2022, Altier has purchased 2 tickets from Ticketmaster to events that took place in New York state. For instance, he recalls purchasing tickets to the Phish concert at Madison Square Garden held in July 2023, and to Joe Russo's Almost Dead at Pier 17 that same month.

13.     Altier has an account with Ticketmaster and/or Live Nation that he used to purchase tickets

---

[2] *See id*. at § 25.34.

to events in New York state since August 29, 2022. His Ticketmaster and/or Live Nation accounts should show the tickets that he has purchased and ancillary fees imposed.

14.    Plaintiff Kalen Cooper ("Cooper") is an individual consumer who, at all times material hereto, was a resident of the State of California. Cooper is a resident of Pasadena, California.

15.    Since August 29, 2022, Cooper has purchased approximately 2 tickets from Ticketmaster to events that took place in New York state. Specifically, she recalls purchasing tickets to a New York Knicks v. Philadelphia 76ers NBA game in New York.

16.    Cooper has an account with Ticketmaster and/or Live Nation that she used to purchase tickets to events in New York state since August 29, 2022. Her Ticketmaster and/or Live Nation accounts should show the tickets that she has purchased and ancillary fees imposed.

17.    Plaintiff Eugene Jo ("Jo") is an individual consumer who, at all times material hereto, was a resident of the State of California. Jo is a resident of Los Angeles, California.

18.    Since August 29, 2022, Jo has purchased approximately 1 ticket from Ticketmaster to an event that took place in New York state. Specifically, the event is the Brooklyn Nets v. Philadelphia 76ers NBA Game at the Barclays Center in Brooklyn, New York.

19.    Jo has an account with Ticketmaster and/or Live Nation that she used to purchase the ticket to an event in New York state since August 29, 2022. Her Ticketmaster and/or Live Nation accounts should show the ticket that she has purchased and ancillary fees imposed.

20.    Upon information and belief, the transaction flow process Abbott, Altier, Cooper, and Jo viewed on Defendants' website while they purchased tickets to the events in question was substantially similar to the process depicted in this complaint. That is, on the initial ticket selection page on Defendants' websites one price was displayed, but after particular tickets were selected, ancillary fees were added and only shown on subsequent pages, increasing the total price so that it was higher than the originally displaced price.

21.    Plaintiffs claims accrued between August 29, 2022 and March 1, 2025. Plaintiffs and class members have been injured and suffered loss from the practices complained of and are at risk of further injury in the future unless enjoined. Plaintiffs and class members should have been charged the initially displayed "all in" ticket prices, not higher prices with additional fees that were only disclosed at

subsequent stages of the online purchase process on Defendants' websites. Plaintiffs and class members seek applicable statutory damages under the statutes described herein for each violation they were subjected to.

22.     Live Nation Entertainment, Inc. (formerly known as Live Nation, Inc.) is a Delaware corporation with its principal place of business at 9348 Civic Center Drive, Beverly Hills, California 90210 and/or other locations in California. Live Nation is the largest live entertainment company in the world, connecting over half a billion fans across all of its platforms in 49 countries.[3] In 2023, Live Nation distributed over 620 million tickets through its systems, making it the world's leading live entertainment ticket sales and marketing company. *Id*. Live Nation's 2023 revenues were approximately $22.75 billion, a 36% increase compared to the previous year. Its "Ticketing" segment generated nearly $2.96 billion in revenue, which includes ticketing service charges for tickets sold to both Live Nation's own events and those of third-party clients. *Id*.

23.     Defendant Ticketmaster LLC is a wholly-owned subsidiary of Live Nation Entertainment, Inc. Ticketmaster is a limited liability company organized and existing under the laws of Virginia with its principal place of business at 7060 Hollywood Boulevard, Hollywood, California, 90028 and/or other locations in California. Ticketmaster LLC is the successor in interest to Ticketmaster Entertainment, Inc., a Delaware corporation, and is the largest ticketing company in the United States, with 2019 revenues of approximately $1.54 billion. Ticketmaster's business includes two main arms: its legacy primary ticketing services business and a newer, but increasingly-dominant, secondary ticketing service business. In performing the acts herein alleged, Ticketmaster acted under the direction and control of, and in coordination with, Defendant Live Nation Entertainment, and its senior-most executives.

24.     Live Nation Entertainment and Ticketmaster merged in an all-stock transaction in 2010.

25.     At all relevant times, Defendants marketed and sold tickets to events in New York state to consumers nationwide, including those in California, such as Plaintiffs and members of the Class.

---

[3] Live Nation Entertainment, Inc., Form 10-K, February 22, 2024, available at SEC Edgar Database.

**JURISDICTION AND VENUE**

26.     This Court has jurisdiction over Defendants because they are headquartered in Los Angeles County. Venue is proper because a substantial amount of the events giving rise to this action occurred in Los Angeles County.

27.     There is no federal jurisdiction under the Class Actions Fairness Act, 28 U.S.C. § 1332(d) because (1) all Class Members are residents of California; (2) Defendants are citizens of California; (3); and (3) no other class action has been filed against Defendants in the past three years that asserts the same or similar factual allegations.

28.     The claims asserted by Plaintiffs are not subject to mandatory arbitration as set forth in Defendants' Terms of Use because the Ninth Circuit Court of Appeals found that those procedures were unconscionable, unenforceable and that California's Discover Bank rule. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 690 (9th Cir. 2024).  The court in *Heckman* concluded that the Federal Arbitration Act ("FAA") did not apply to Ticketmaster's Terms of Use and California's *Discover Bank* rule—which prohibits class-action waivers in consumer contracts of adhesion—governed and dictated that the arbitration agreement was also unenforceable for that reason. In short, because the company's terms of service contained a "mass arbitration protocol"—batching of claims and bellwether proceedings—the FAA did not protect the arbitration agreement from challenge under *Discover Bank* and class proceedings were therefore permitted.  Plaintiffs' claims accrued during the period those same Terms of Use were in force. If Plaintiffs here were required to file individual claims in arbitration forum, they would be subjected to the same provisions found to be unconscionable and unenforceable by the Ninth Circuit in *Heckman*. As a result, they properly file their class claims in this court.

**NEW YORK ARTS & CULTURAL AFFAIRS LAW**

29.     New York enacted Arts & Cultural Affairs Law § 25.07(4), effective on August 29, 2022, which provides that "[e]very operator or operator's agent of a place of entertainment, any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets … shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser. Such disclosure of the total cost and fees shall be

displayed in the ticket listing prior to the ticket being selected for purchase." § 25.07(4). "[T]he price of the ticket shall not increase during the purchase process." *Id*.

30.     In response to ticketing websites' communications to the State of New York's Division of Licensing Services as to the scope of the law, the Division of Licensing Services clarified: "the ticket purchasing process begins once a consumer visits a ticket marketplace and ***first sees a list of seat prices***."[4] (emphasis added).

31.     The Division of Licensing Services added that "[f]rom the moment the prospective purchaser assesses the [] ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself." *Id*. "When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser should not then have to search for the total price of the ticket as the purchaser proceeds through the purchasing process, it should continue to be readily available to the purchaser." *Id*. at 2.

32.     The statute does not speak to any purchasing limitations. By all accounts, the statute applies to: (i) New York residents who purchase tickets to an event in New York state (ii) New York residents who purchase tickets to a non-New York based event and (iii) non-New York residents who purchase of tickets to an event in New York state.  This is confirmed in New York Arts & Cultural Affairs Law § 25.01 which addresses the broad scope of the statute to include: (i) ticket sales by non-New York based sellers and (ii) ticket sales by non-New York purchasers to events in New York state, as follows:

> The legislature further finds that many ticket resellers advertise and sell tickets to places of entertainment within the boundaries of New York state often from locations outside the state, without adhering to the provisions of this article. The legislature objects to any claim that businesses domiciled outside New York state are exempted from this statute when selling tickets to events occurring in New York state, ***regardless of the territories of origin of both the buyer and seller***. It is the legislature's intent that all governmental bodies charged with enforcement of this article, including the attorney general of New York state have the authority to regulate the activities of all persons reselling tickets to venues located within this state to the full extent of the state's powers under the federal and state constitutions and that this article be construed in light of this purpose.

(emphasis added).

_____

[4] *See* N.Y. Dep't of State, Div. Licens. Servs., Request for Additional Guidance – New York State Senate Bill S.9461, (Oct 24, 2022).

33.     New York Arts & Cultural Affairs Law § 25.33 provides that affected consumers are entitled to $50 in statutory damages, injunctive relief, plus attorney's fees and costs.

> Notwithstanding any right of action granted to any governmental body pursuant to this chapter, any person who has been injured by reason of a violation of this article may bring an action in his or her own name to enjoin such unlawful act, an action to recover his or her actual damages or fifty dollars, whichever is greater, or both such actions. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Arts & Cult. Aff. Law § 25.33.

34.     All Class members, including Plaintiffs are "person[s] who ha[ve] been injured by reason of a violation of this article" and entitled to "bring an action in his or her own name to enjoin such unlawful act, an action to recover his or her actual damages or fifty dollars, whichever is greater, or both such actions."

## **FACTUAL ALLEGATIONS**

35.     Defendants are in the business of ticket sales and distribution, selling tickets for concerts, sporting events, and other events on their Website and the Ticketmaster Application. Defendants sell tickets to consumers for events in New York state.

36.     Since at least August 29, 2022, Defendants have failed to disclose the total cost of the ticket on the Website prior to the user selecting the ticket for purchase. Defendants initially display a lower price, only disclosing the applicable fees and total selling price on subsequent screens during the checkout process.

37.     The process described below is common. When a consumer goes to the Website and selects an event for which they want to consider purchasing tickets in New York state, they are presented with the following screen announcing that Ticketmaster now uses "All-in Pricing."



38.     Defendants explain All-In Pricing as follows: "that means that you'll see cost of the ticket up front (before taxes)." That statement is inaccurate.

39.     When the consumer hits continue, they are brought to the event's ticket listing page, where they can input the number of tickets they want and see a listing of the available tickets, seat location, and corresponding prices for the tickets. Also displayed is fine print notation indicating that "an order processing fee of up to $3.95 may be added to each order." However, this possible "order processing fee" is not included in the initially displayed price for the ticket. For instance, for the selected event (New York Rangers vs. Tampa Bay Lightning at Madison Square Garden in New York City on April 17, 2025) the initial screen shown to the consumer shows that the lowest priced ticket available is Section 419, Row 7, and is listed for **$146.37**.



40.    If the consumer wants to move forward with the purchase, they can click on the desired ticket offering for that seat in Section 419, Row 7, which takes them to the following screen. Notably, the subtotal is *not* $146.37 as initially listed under the "Lowest Price" column, *nor* as displayed above the subtotal, but instead **$150.32**. This screen does not contain any additional information as to the price increase. Thus, the consumer is only shown the true, higher price of the ticket *after* she selects the ticket on the initial screen.

41.     When the consumer proceeds with the transaction by clicking the green "Next" button, they are shown the following page. The total displayed is $150.32, which is broken down into the "Verified Resale Ticket" ($123.00), "Service Fee" ($23.37), and "Order Processing Fee" ($3.95). Thus, the consumer is only shown the actual higher ticket amount including the "Order Processing Fee" on the subsequent checkout page, not the initial screen where the ticket was originally presented for sale. Such conduct violates the Arts & Cultural Affairs Law § 25.07(4).



42.     The same type of pricing discrepancy occurs for other events sold on Ticketmaster, such as the July 23, 2025 Chris Stapelton Concert at the UBS Arena in Belmont Park, New York. As with the New York Rangers game tickets described above, customers who select the Chris Stapleton event are first shown an alert on "All-in Pricing."



43.     Once a customer clicks the "Accept & Continue" button, the Website indicates that the lowest price of a single available ticket is located in Section 324, Row 5, priced at **$83.55**. The Website also says that "Price includes fees (before taxes if applicable). An order processing fee of up to $6.00 may be added to each order." Notably, the possible order processing fee for this event is greater than the possible $3.95 for the Rangers game.



44.     By not including the actual amount of the "order processing fee" in the total ticket price on the first screen; by using the uncertain word "may" to describe the possible addition of the "order

processing fee" (when Defendants know with certainty that it will be added); and by using smaller and less prominent font to describe it, Defendants violate Arts & Cultural Affairs Law § 25.07(4). When the customer clicks on the specific ticket, they are shown the following screen. The subtotal for the ticket is not $83.55 as previously displayed, or as displayed above the subtotal. Instead, the subtotal is **$89.55**. Once again, this screen contains no information to explain the increase in price.



45.    When the customer clicks the "Next" button, they are taken to the final checkout screen. The total price is $91.05, including $63.75 for the ticket price, $19.80 in "Service Fee", $6.00 in "Order Processing Fee" and $1.50 in tax. Customers are thus unable to view the amount of the "Order Processing Fee" that is added to the total ticket price until the final checkout screen.



46.     Another example of pricing discrepancy is seen in the Katy Perry concert on August 11, 2025 at Madison Square Garden, New York. As with the previous events, Customers who click on the Katy Perry concert are first shown a notice on "All-in Pricing."



47.     Next, customers are shown that the "lowest price" single ticket available is in Section 312, Row 1, listed at **$161.00**. The screen also shows that "Price includes fees (before taxes if applicable). An order processing fee of up to $3.95 may be added to each order."



48.     Upon clicking on that ticket, customers are shown a subsequent screen which displays the subtotal as **$164.95**. As with the previously discussed events, there is no explanation given for the price increase on this screen.



49.     When the consumer clicks the "Next" button, they are taken to the final checkout screen, where the total price is $164.95, which includes $140 in ticket price, $21 in "Service Fee", and $3.95 for an "Order Processing Fee." This final checkout screen is the first time the consumer can see the amount and applicability of the "Order Processing Fee."



50.     As shown, Ticketmaster's general practice at many New York venues is not to disclose the "total cost" including "all ancillary fees that must be paid in order to purchase the ticket" "prior to the ticket being selected for purchase" as required by §25.07.  Rather, the initially displayed ticket price is lower than the total cost, which is only disclosed on subsequent screens on the Website. .

51.     While the opening screen may provide that "an order processing fee of up to $3.95 may be added to each order" (amount varying with event), such statements do not comply with New York Arts & Cultural Affairs Law § 25.07.  Any such reference does not comply with § 25.07, *inter alia*, as (1) through use of the word "may", the reference to the order processing fee is presented as an uncertainty, when Defendants, who control and program the Website, already know that it will be imposed, but do not include the ancillary fee in the listed ticket price; (2) "the total cost of the ticket, inclusive of all ancillary fees" must be listed on the opening ticket listing screen; (3) "the price of the ticket shall not increase during the purchase process", and; (4) the reference is in small in descript text, in contrast to the ticket price which is prominently featured in larger, bold and colored font to stand out and be far more noticeable to the consumer.

52.     Recent cases in New York federal courts have upheld similar claims made against other company defendants. *See*, *Vassell v. SeatGeek, Inc.,* 2025 WL 240912, *12 (E.D.N.Y., Jan. 17, 2025) (denying motion to dismiss because "plaintiffs suffered economic harm as a result of defendant's alleged unlawful failure to disclose 'the total cost of the ticket… in a clear and conspicuous manner' at the 'first point that ticket prices [were] displayed on their website."); *Berryman v. Reading International, Inc*., 2025 WL 315403 (S.D.N.Y., Jan. 28, 2025) (denying motion to dismiss even though defendant's website discloses the service fee on a page prior to the final "order confirmation" page because the fee was not disclosed prior to the ticket being selected for purchase, as required by § 25.07(4).).

## CLASS ALLEGATIONS

53.     Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated as a class action pursuant to California Code of Civil Procedure § 382. Plaintiff seeks to represent the following putative class:

> All California residents who purchased tickets through Defendants' Website(s) to an event in New York state, and were charged an order processing fee or other ancillary fee that was not included in the total price listed on the initial ticket listing page for the event on the

Website(s), during the Class Period.

54.    The "Class Period" beings on August 29, 2022 and continues through the date of judgment.

55.    Specifically excluded from the Class are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

56.    Plaintiff reserves the right to amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues.

57.    This action may be certified as a class action under California Code of Civil Procedure § 382 because it satisfies all requirements of that rule including any numerosity, commonality, typicality, adequacy, and superiority requirements.

58.    **Numerosity**. The Class's members are so numerous that joinder of each individual class member would be impracticable and unfeasible, and the disposition of their claims as a class will benefit the parties, the Court, and the interests of justice. Upon information and belief, Defendants sells approximately 500 million tickets per year in the United States. New York comprises approximately 6% of the U.S. population, so Defendants likely sell 30 million or more tickets to events in New York State. Based on the size of California's population, the class certainly contains many thousands of individuals who purchased tickets for events in New York. The precise number of the Class Members should be readily available from a review of Defendant's business records but is expected to exceed 5,000 persons.

59.    **Ascertainability**. The proposed Class is ascertainable from objective criteria. Specifically, on information and belief, Defendants maintain business records, which include the names, contact information and other identifying information of members of the proposed Class, from which all members of the Class could be notified.  Among other things, in order to purchase tickets on the Websites, class members must establish an online account with Defendants.  On information and belief, Defendants maintain sales records for account holders that show the ticket prices and ancillary fees charged on ticket transactions within the Class Period, including the identity and address of the purchaser.  All class members are persons with Ticketmaster and/or Live Nation accounts.

60.     **Commonality and Predominance**. There is a well-defined community of interest among the Class Members and common questions of both law and fact predominate over questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a.      Whether Defendants failed to disclose the total cost of the ticket, including all ancillary fees, prior to the tickets being selected for purchase in violation of New York Arts & Cultural Affairs Law § 25.07(4);

b.      Whether the displayed price of Defendants' tickets increases during the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4);

c.      Whether Defendants failed to disclose all service charges and ancillary fees in a clear and conspicuous manner in violation of New York Arts & Cultural Affairs Law § 25.07(4); and

d.      The relief due, including statutory damages and injunctive relief.

61.     **Typicality**. Plaintiffs' claims are typical of those of the Class Members in that they arise out of the same course of conduct of Defendants, who have policies and practices of deceptive pricing that violate § 25.07(4). Plaintiffs' claims are further typical in that Plaintiffs seek the same relief as all other Class Members and under the same theories of recovery. The effort Plaintiffs undertake to pursue their own claim will significantly benefit the Class Members because of the identical nature of the issues across the Class.  Unless corrected and enjoined, Plaintiffs, like other class members, remain at risk of further violations of the practices described.

62.     **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs share a common interest with the Class Members, with respect to the conduct of the Defendants herein and redress of injury. Plaintiffs have suffered an injury-in-fact as a result of the conduct of the Defendants, as alleged herein. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex consumer fraud and class actions. Plaintiffs and their counsel intend to prosecute this action vigorously and faithfully for the benefit of the Class Members. Plaintiffs have no interests contrary to the Class Members, and will fairly and adequately protect the interests of the Class.

63.    **Community of Interest**. The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiffs have claims typical of the Class Members.

64.    **Superiority**. The certification of the Class in this action is superior to the litigation of a multitude of cases by members of the putative Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are members of the Class who are unlikely to join or bring an action due to, among other reasons, their reluctance to spend large sums of time and/or money to recover what may be a relatively modest individual recovery. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received. The damages and other potential recovery for each individual member of the Class are modest relative to the substantial burden and expense of individual prosecution of these claims.

65.    A class action is also superior because Defendants' common Terms of Use (effective date July 2, 2021)[5] that was in effect when class members claims accrued, contain a common arbitration clause which has been found to be unconscionable and unenforceable. *See Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024).   The Court in *Heckman* further confirmed that Defendants' arbitration clause did not contemplate bilateral arbitration for consumers, was not preempted by the FAA and therefore California's *Discovery Bank* rule prohibiting class action waivers applied.  *Id.* at 689 ("We also hold, based on an alternate and independent ground, that the application of California unconscionability law to the arbitration agreement at issue here is not preempted by the FAA. We agree with our concurring colleague that the FAA simply does not apply to and protect the mass arbitration model set forth in Ticketmaster's Terms and New Era's Rules. Because the FAA does not apply, the rule of *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), governs the case before us.  In *Discover Bank*, the California Supreme Court held that class action waivers in

---

5    Found at https://help.ticketmaster.com/hc/en-us/articles/10468830739345-Terms-of-Use?_gl=1*1d9abe0*_gcl_au*NjEzNDAzNjQ1LjE3MzM1MDMwNDk.*_ga*MjEzNjU3Njk4MS4xNzE2NTgyNzM5*_ga_C1T806G4DF*MTczODYyMzc1NS45NC4xLjE3Mzg2MjY3MjIuMjAuMC4w*_ga_H1KKSGW33X*MTczODYyMzc1NS44Mi4xLjE3Mzg2MjY3MjEuMjEuMC4w&_ga=2.192195242.1662087761.1738606630-2136576981.1716582739 . (last accessed February 3, 2025)

consumer contracts of adhesion are unconscionable under California law. *Id.,* 30 Cal.Rptr.3d 76, 113 P.3d at 1110).

66.     In the alternative, the above-referenced Class may be certified because:

a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendants;

b.     The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the Class who are not parties to the adjudications, or which would substantially impair or impede the ability of other members to protect their interests; and

c.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

## **FIRST CAUSE OF ACTION**

### **Violation of the New York Arts & Cultural Affairs Law § 25.07(4)**

67.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

68.     Plaintiffs bring this claim individually and on behalf of the Class.

69.     Pursuant to New York Arts & Cultural Affairs Law § 25.07(4), both Defendants operate "platform[s] that facilitates the sale or resale of tickets."

70.     Pursuant to § 25.07(4), Defendants have a statutory obligation to "disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser" at the first point that ticket prices are displayed on their website.

71.    Defendants, through their failure to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" until after a ticket is selected for purchase, have violated New York Arts & Cultural Affairs Law § 25.07(4).

72.    Moreover, Defendant violated § 25.07(4) by increasing the total cost of tickets during the purchase process.

73.    Furthermore, Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing at the first stage to "disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser."

74.    Defendant's added "fees", including but not limited to the order processing fee, constitute an "ancillary fee[] that must be paid in order to purchase the ticket." § 25.07(4).

75.    Plaintiffs purchased tickets through Defendant's website and were forced to pay Defendant's added "Fees", including order processing fees, in order to secure their tickets. Plaintiffs were harmed by paying this added charge, even though that total cost was not disclosed to Plaintiffs at the beginning of the purchase process, which is unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4).

76.    Indeed, this is precisely the type of pricing gimmick the statute was designed to prevent. The Division of Licensing Services, in response to an inquiry from ticketing websites about the scope of the statute, stated clearly that "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices" and that "[f]rom the moment the prospective purchaser assesses the… ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself."[6]

77.    Plaintiffs, on behalf of themselves and the Class, seek to enjoin the unlawful acts and practices described herein; to recover statutory damages of fifty dollars per violation; to recover reasonable attorneys' fees and costs; and for all other relief that is just and equitable under the circumstances and allowed by law. *See* N.Y. Arts & Cult. Aff. Law § 25.33.

---

[6] *See* N.Y. Dep't of State, Div. Licens. Servs., Request for Additional Guidance – New York State Senate Bill S.9461, (Oct 24, 2022).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly aggrieved person in the Class, prays for judgment against Defendant as follows:

1. For an order certifying that the action may be maintained as a class action and appointing Plaintiff and their undersigned counsel to represent the Class in this litigation;

2. For an order declaring that the acts and practices of Defendant constitute violations of the statute referenced herein and enjoining such practices;

3. For an order finding in favor of Plaintiffs and the Class;

4. For statutory damages in amounts to be determined;

5. For prejudgment interest on all amounts awarded;

6. For injunctive relief as pleaded or as the Court may deem proper;

7. For an award of reasonable attorneys' fees and costs; and

8. For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of her claims to the extent authorized by law.

Respectfully submitted,

ZIMMERMAN REED, LLP

Date: March 7, 2025          By:    _/s/ Caleb Marker_
                                  Caleb Marker (SBN 269721)
                                  caleb.marker@zimmreed.com
                                  Jessica Liu (SBN 358713)
                                  jessica.liu@zimmreed.com
                                  **ZIMMERMAN REED LLP**
                                  6420 Wilshire Blvd., Suite 1080
                                  Los Angeles, California 90048
                                  Telephone: (877) 500-8780
                                  Facsimile: (877) 500-8781

                                  *Attorneys for Plaintiffs*
                                  Shawn Abbott, Marshall Altier, Kalen Cooper, and
                                  Eugene Jo