JENNER & BLOCK LLP
Brandon D. Fox (SBN 290409)
BFox@jenner.com
Alexander M. Smith (SBN 295187)
ASmith@jenner.com
Kristen L. Green (SBN 328618)
KGreen@jenner.com
Eric W. Wolff (SBN 341180)
Eric.Wolff@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:   (213) 239-5100
Facsimile:    (213) 239-5199

Alison I. Stein (*pro hac vice*)
AStein@jenner.com
Cayman C. Mitchell (*pro hac vice)*
CMitchell@jenner.com
1155 Avenue of the Americas
New York, NY  10036-2711
Telephone:   (212) 891-1600
Facsimile:    (212) 891-1699

Attorneys for Defendants Ticketmaster,
L.L.C. and Live Nation Entertainment, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ABBOTT, et al., individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>TICKETMASTER, LLC, et al.,<br><br>                Defendants. | Case No. 2:25-cv-10757-GW (KSx)<br><br>**ANSWER TO FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. George Wu<br>Courtroom: 9D (First Street)<br>Trial Date: Not Set<br>PTC Date: Not Set |

Defendants Ticketmaster, L.L.C. and Live Nation Entertainment, Inc. ("Defendants"), by and through their attorneys Jenner & Block LLP, hereby answer Plaintiffs' First Amended Complaint ("FAC") and state their defenses thereto as follows:

## INTRODUCTION

1.      This case challenges Defendants' common conduct of improperly charging consumers on their websites in violation of applicable provisions of the New York Arts and Cultural Affairs Law, by not displaying the total ticket cost and all fees on the initial ticket listing and selection page. Rather, the higher total ticket costs, including all ancillary fees, are only disclosed on subsequent pages on Defendants' websites that are accessible only after the consumer selects a specific available ticket for purchase. Such conduct violates New York Arts and Cultural Affairs Law, §25.07(4) and/or other laws.

Answer: Defendants admit that Plaintiffs purport to challenge Defendants' conduct. Defendants deny the remaining allegations of Paragraph 1 of the FAC.  Answering further, Defendants note that Ticketmaster has: (1) utilized "all-in" pricing for all events in New York since August 2022; and (2) adopted "all-in" pricing across its entire ticketing platform as of May 12, 2025, the effective date of the FTC's Trade Regulation Rule on Unfair or Deceptive Fees.  As a result, Plaintiffs and putative class members would have seen the all-in price from the outset of the transactions at issue in the FAC.

2.      When ticket purchasers visit Defendants' website https://ticketmaster.com or www.livenation.com either through the webpages or through Defendants' mobile application (collectively the "Website" or "Websites") to buy an admission ticket to an event in New York state, they are initially quoted one price, only to later be shown the true total ticket price, which is higher and includes additional "Fees", including but not limited to an order processing fee.  Other ancillary fees charged to Class members by Defendants at relevant times during the Class Period include, but are not limited to, service fees, delivery fees, order processing fees, and/or facility fees (collectively "Fees").

Answer: Defendants lack information or knowledge sufficient to admit or deny what "ancillary fees" were charged to putative class members by Defendants and on that basis

deny that "[o]ther ancillary fees charged to Class members by Defendants at relevant times during the Class Period include, but are not limited to, service fees, delivery fees, order processing fees, and/or facility fees." Defendants deny the remaining allegations of Paragraph 2 of the FAC. Answering further, Defendants also note that Ticketmaster has: (1) utilized "all-in" pricing for all events in New York since August 2022; and (2) adopted "all-in" pricing across its entire ticketing platform as of May 12, 2025, the effective date of the FTC's Trade Regulation Rule on Unfair or Deceptive Fees.

3. These added Fees and their specific amounts are only presented *after* consumers select their ticket option and pass through subsequent screens in the purchase process.

Answer: Denied. Answering further, Defendants note that Ticketmaster has: (1) utilized "all-in" pricing for all events in New York since August 2022; and (2) adopted "all-in" pricing across its entire ticketing platform as of May 12, 2025, the effective date of the FTC's Trade Regulation Rule on Unfair or Deceptive Fees.

4. In an effort to stop this type of business practice, New York State passed the Arts and Cultural Affairs Law, which provides that a "platform that facilitates the sale or resale of the tickets… shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket." § 25.07(4). Specifically, the statute requires that the "disclosure of the total cost and fees shall be displayed in the ticket listing ***prior*** to the ticket being selected for purchase." *Id*. (emphasis added). § 25.07(4). Section 25.07(4) further states that "***[t]he price of the ticket shall not increase during the purchase process***." *Id*. (emphasis added). This latest version of the law went into effect August 29, 2022.[1]

Answer: Paragraph 4 of the FAC purports to quote from New York Arts & Cultural Affairs Law § 25.07 ("Section 25.07"), which speaks for itself. To the extent a response is required, Defendants admit that Section 25.07 went into effect on August 29, 2022.

---

[1] *See* N.Y. Arts & Cult. Aff. Law § 25.07.

ANSWER TO FIRST AMENDED COMPLAINT

Defendants deny that the quoted language in Paragraph 4 is a complete and accurate recitation of Section 25.07 and deny the remaining allegations of Paragraph 4 of the FAC.

5.    Arts and Cultural Affairs Law § 25.07(4) provides that a "platform that facilitates the sale or resale of tickets … shall disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser." *Id.*

Answer: Paragraph 5 of the FAC purports to quote from Section 25.07, which speaks for itself.  To the extent a response is required, Defendants deny that the language quoted in Paragraph 5 is a complete and accurate recitation of Section 25.07.  Defendants deny the remaining allegations, if any, of Paragraph 5 of the FAC.

6.    Plaintiffs were subjected to the above-described practices and injured by Defendants' conduct, in violation of § 25.07(4), when they purchased tickets to an event in New York state from Defendants. This occurred when Plaintiffs viewed tickets offered for sale on Defendants' website that had one price depicted on the first screen listing available tickets for sale, only to have the charge rise after they selected particular tickets on subsequent screens required to finalize the purchase process.

Answer: Denied.

7.    As a result of Defendants' failure to adhere to these disclosure standards, Plaintiffs seek relief in this action individually, and on behalf of all other ticket purchasers of Defendants' to events in New York state for statutory damages in the amount of fifty dollars per violation,[2] reasonable attorneys' costs and fees, and injunctive relief under New York Arts and Cultural Affair Law § 25.33 as well as all other relief that may be just and equitable in the circumstances. As the practices described within are continuing and ongoing, injunctive relief (both private injunctive relief and public injunctive relief) is both appropriate and necessary to protect the members of class and future consumers within the general public from being harmed from the practices complained of in the future and

---

[2] *See id.* at § 25.34.

incurring additional injuries. Plaintiffs and members of the class are likely to attempt to engage in ticket transactions in the future and Defendants' improper price disclosures as described herein should be modified and corrected to avoid continuation of the practices now complained of.   Even if Defendants have temporarily suspended the deceptive practices complained of, until enjoined by the court the risk that Defendants will revert back to prior practices remains and creates the additional risk of future injury to Plaintiffs and the Class.

Answer: Defendants lack knowledge or information sufficient to admit or deny whether "Plaintiffs and members of the class are likely to engage in ticket transactions in the future" and on that basis deny that allegation.   Defendants deny that any of their practices were or are "deceptive."   Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 7 of the FAC but deny that Plaintiffs and putative class members are entitled to any such relief.   Defendants deny the remaining allegations of Paragraph 7 of the FAC.

## PARTIES

8.      Plaintiff Shawn Abbott ("Abbott") is an individual consumer who, at all times material hereto, was a resident of the State of California. Abbott is a resident of Palm Desert, California.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 8 of the FAC and on that basis deny those allegations.

9.      Since August 29, 2022, Abbott has purchased approximately 10-12 tickets from Ticketmaster to events that took place in New York state. For instance, she recalls purchasing tickets to various U.S. Open Tennis Tournament events at Arthur Ashe Stadium, Louis Armstrong Stadium, Grounds Pass, and Billie Jean King.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 9 of the FAC and on that basis deny those allegations.

10.      Abbott has an account with Ticketmaster and/or Live Nation that she used to purchase tickets to events in New York state since August 29, 2022. Her Ticketmaster

and/or Live Nation accounts should show the tickets that she has purchased and ancillary fees imposed.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 10 of the FAC and on that basis deny those allegations.

11.    Plaintiff Marshall Altier ("Altier") is an individual consumer who, at all times material hereto, was a resident of the State of California. Altier is a resident of San Diego, California.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 11 of the FAC and on that basis deny those allegations.

12.    Since August 29, 2022, Altier has purchased 2 tickets from Ticketmaster to events that took place in New York state. For instance, he recalls purchasing tickets to the Phish concert at Madison Square Garden held in July 2023, and to Joe Russo's Almost Dead at Pier 17 that same month.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 12 of the FAC and on that basis deny those allegations.

13.    Altier has an account with Ticketmaster and/or Live Nation that he used to purchase tickets to events in New York state since August 29, 2022. His Ticketmaster and/or Live Nation accounts should show the tickets that he has purchased and ancillary fees imposed.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 13 of the FAC and on that basis deny those allegations.

14.    Plaintiff Kalen Cooper ("Cooper") is an individual consumer who, at all times material hereto, was a resident of the State of California. Cooper is a resident of Pasadena, California.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 14 of the FAC and on that basis deny those allegations.

ANSWER TO FIRST AMENDED COMPLAINT

15.     Since August 29, 2022, Cooper has purchased approximately 2 tickets from Ticketmaster to events that took place in New York state. Specifically, she recalls purchasing tickets to a New York Knicks v. Philadelphia 76ers NBA game in New York.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 15 of the FAC and on that basis deny those allegations.

16.     Cooper has an account with Ticketmaster and/or Live Nation that she used to purchase tickets to events in New York state since August 29, 2022. Her Ticketmaster and/or Live Nation accounts should show the tickets that she has purchased and ancillary fees imposed.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 16 of the FAC and on that basis deny those allegations.

17.     Plaintiff Eugene Jo ("Jo") is an individual consumer who, at all times material hereto, was a resident of the State of California. Jo is a resident of Los Angeles, California.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 17 of the FAC and on that basis deny those allegations.

18.     Since August 29, 2022, Jo has purchased approximately 1 ticket from Ticketmaster to an event that took place in New York state. Specifically, the event is the Brooklyn Nets v. Philadelphia 76ers NBA Game at the Barclays Center in Brooklyn, New York.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 18 of the FAC and on that basis deny those allegations.

19.     Jo has an account with Ticketmaster and/or Live Nation that she used to purchase the ticket to an event in New York state since August 29, 2022. Her Ticketmaster and/or Live Nation accounts should show the ticket that she has purchased and ancillary fees imposed.

Answer: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 19 of the FAC and on that basis deny those allegations.

ANSWER TO FIRST AMENDED COMPLAINT

20.    Upon information and belief, the transaction flow process that Abbott, Altier, Cooper, and Jo viewed on Defendants' website with respect to ancillary Fees charged while they purchased tickets to the events venued in New York state was substantially similar to the process depicted in this complaint and which other members of the Class were subjected to. That is, on the initial ticket selection page on Defendants' Websites one price was displayed, but after particular tickets were selected, ancillary fees were added and only shown on subsequent pages, increasing the total price so that it was higher than the originally displaced [sic] price.

Answer: Defendants lack knowledge or information sufficient to admit or deny whether the "the transaction flow process that Abbott, Altier, Cooper, and Jo viewed on Defendants' website with respect to ancillary Fees charged while they purchased tickets to the events venued in New York state was substantially similar to the process depicted in this complaint and which other members of the Class were subjected to" and on that basis deny that allegation.  Defendants deny the remaining allegations of Paragraph 20 of the FAC.  Answering further, Defendants note that Ticketmaster has: (1) utilized "all-in" pricing for all events in New York since August 2022; and (2) adopted "all-in" pricing across its entire ticketing platform as of May 12, 2025, the effective date of the FTC's Trade Regulation Rule on Unfair or Deceptive Fees.

21.    Plaintiffs' claims accrued between August 29, 2022 and March 1, 2025. Plaintiffs and class members have been injured and suffered loss from the practices complained of and are at risk of further injury in the future unless enjoined. Plaintiffs and class members should have been charged the initially displayed "all in" ticket prices, not higher prices with additional Fees that were only disclosed at subsequent stages of the online purchase process on Defendants' websites. Plaintiffs and class members seek applicable statutory damages under the statutes described herein for each violation they were subjected to, along with other available relief.

Answer: Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 21 of the FAC for "claims accrued between August 29, 2022 and March 1, 2025"

ANSWER TO FIRST AMENDED COMPLAINT

but deny that Plaintiffs and putative class members are entitled to any such relief. Defendants deny the remaining allegations of Paragraph 21 of the FAC.

22. Live Nation Entertainment, Inc. (formerly known as Live Nation, Inc.) is a Delaware corporation with its principal place of business at 9348 Civic Center Drive, Beverly Hills, California 90210 and/or other locations in California. Live Nation is the largest live entertainment company in the world, connecting over half a billion fans across all of its platforms in 49 countries.[3] In 2023, Live Nation distributed over 620 million tickets through its systems, making it the world's leading live entertainment ticket sales and marketing company. *Id.* Live Nation's 2023 revenues were approximately $22.75 billion, a 36% increase compared to the previous year. Its "Ticketing" segment generated nearly $2.96 billion in revenue, which includes ticketing service charges for tickets sold to both Live Nation's own events and those of third-party clients. *Id.*

Answer: Defendants admit that Live Nation "is a Delaware corporation with its principal place of business at 9348 Civic Center Drive, Beverly Hills, California 90210 and/or other locations in California." The remaining allegations of Paragraph 22 appear to cite Live Nation Entertainment, Inc.'s 2024 Form 10-K, which speaks for itself. To the extent a response is required, Defendants admit that Paragraph 22 accurately cites certain information set forth in Live Nation's 2024 Form 10-K. Defendants deny the remaining allegations, if any, of Paragraph 22 of the FAC.

23. Defendant Ticketmaster LLC is a wholly-owned subsidiary of Live Nation Entertainment, Inc. Ticketmaster is a limited liability company organized and existing under the laws of Virginia with its principal place of business at 7060 Hollywood Boulevard, Hollywood, California, 90028 and/or other locations in California. Ticketmaster LLC is the successor in interest to Ticketmaster Entertainment, Inc., a Delaware corporation, and is the largest ticketing company in the United States, with 2019

---

[3] Live Nation Entertainment, Inc., Form 10-K, February 22, 2024, available at SEC Edgar Database.

ANSWER TO FIRST AMENDED COMPLAINT

revenues of approximately $1.54 billion. Ticketmaster's business includes two main arms: its legacy primary ticketing services business and a newer, but increasingly-dominant, secondary ticketing service business. In performing the acts herein alleged, Ticketmaster acted under the direction and control of, and in coordination with, Defendant Live Nation Entertainment, and its senior-most executives.

Answer: Defendants admit that Ticketmaster, L.L.C. "is a wholly-owned subsidiary of Live Nation Entertainment, Inc." and that "Ticketmaster is a limited liability company organized and existing under the laws of Virginia." Ticketmaster denies that its principal place of business is located at 7060 Hollywood Boulevard, Los Angeles, California 90028 and notes that its principal place of business is located at 9348 Civic Center Drive, Beverly Hills, California 90210. Whether Ticketmaster, L.L.C. is "the successor in interest to Ticketmaster Entertainment, Inc., a Delaware corporation" and whether Ticketmaster, L.L.C., "[i]n performing the acts herein alleged, . . . acted under the direction and control of, and in coordination with, Defendant Live Nation Entertainment, and its senior-most executives" are legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 23 of the FAC and on that basis deny those allegations.

24. Live Nation Entertainment and Ticketmaster merged in an all-stock transaction in 2010.

Answer: Defendants admit that Live Nation, Inc. and Ticketmaster Entertainment, Inc. merged in 2020 to form Live Nation Entertainment, Inc. Defendants deny the remaining allegations, if any, of Paragraph 24 of the FAC.

25. At all relevant times, Defendants marketed and sold tickets to sporting, music, entertainment and/or other events in New York state to consumers nationwide, including Plaintiffs and members of the Class.

Answer: Admitted.

ANSWER TO FIRST AMENDED COMPLAINT

## JURISDICTION AND VENUE

26.   This Court has jurisdiction over Defendants because they are headquartered in Los Angeles County. Venue is proper because a substantial amount of the events giving rise to this action occurred in Los Angeles County.

Answer: Paragraph 26 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that they are subject to personal jurisdiction in the Central District of California and that venue is proper in this Court.  Defendants deny the remaining allegations, if any, of Paragraph 26 of the FAC.

27.   Plaintiffs and Class members were overcharged, paid unlawful and unwarranted feed, suffered harm, injury, and incurred monetary loss as a result of Defendants' false advertising practices and conduct as described herein.

Answer: Denied.

28.    Plaintiffs and the members of the Class suffered economic injuries that flowed from Defendants' violation of the statute. Each were injured each time they purchased a ticket to an event in New York state on the Websites and they were charged and paid a fee that was rendered unlawful by Defendants' failure to disclose the total price to them at the beginning of the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4).

Answer: Denied.

29.   When purchasing tickets to any event venued in New York state from Defendants' Websites and platforms that facilitate the sale or resale of the tickets, Defendants were obligated by law to disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, in the ticket listing prior to the ticket being selected for purchase and the price of the ticket(s) should not have increased during the purchase process. By failing to do this, Defendants violated §25.07(4), injuring and damaging Plaintiffs and each Class Member on each ticket sold, giving them a right to all relief claimed. Plaintiffs and each Class Member should not have been charged more than the initially advertised price displayed by Defendants. Plaintiffs would have

ANSWER TO FIRST AMENDED COMPLAINT

preferred to pay the lower price initially shown on each ticket listing at the point immediately prior to the ticket(s) being selected for purchase and should not have been charged more by Defendants.

Answer: Defendants lack information or knowledge sufficient to admit or deny that Plaintiffs "would have preferred to pay the lower price initially shown on each ticket listing at the point immediately prior to the ticket(s) being selected for purchase" and on that basis deny that allegation. Plaintiffs' allegation that "[w]hen purchasing tickets to any event venued in New York state from Defendants' Websites and platforms that facilitate the sale or resale of the tickets, Defendants were obligated by law to disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, in the ticket listing prior to the ticket being selected for purchase and the price of the ticket(s) should not have increased during the purchase process" is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that allegation. Defendants deny the remaining allegations of Paragraph 29 of the FAC.

30.     Defendants' decision to employ the above-described pricing practices was intentionally done in order to charge and receive more revenues from ancillary Fees when selling event tickets to the Class than would have been the case had Defendants not engaged in those practices. For instance, in a recent action filed by the Federal Trade Commission against Defendants, the F.T.C. alleged that materials that it reviewed during its investigation of Defendants' sales practices demonstrate that Defendants intentionally designed their price display because of internal testing showing that Defendants' revenues increased when their price display for ancillary Fees was less transparent. *See, F.T.C. v Live Nation Entertainment, Inc. and Ticketmaster, L.L.C.*, 2:25-cv-08884 (C. D. Cal., filed September 18, 2025) (Complaint at ¶¶53-62, ECF 1).

Answer: Paragraph 30 purports to summarize allegations made in the complaint filed in *F.T.C. v Live Nation Entertainment, Inc., et al.*, 2:25-cv-08884, which speaks for itself. To the extent a response is required, Defendants deny that Plaintiffs' characterization of

the allegations in that complaint is accurate.  Defendants deny the remaining allegations of Paragraph 30 of the FAC.

31.    The claims asserted by Plaintiffs are not subject to mandatory arbitration as set forth in Defendants' Terms of Use because the Ninth Circuit Court of Appeals found that those procedures were unconscionable, unenforceable and that California's Discover Bank rule. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 690 (9th Cir. 2024). The court in *Heckman* concluded that the Federal Arbitration Act ("FAA") did not apply to Ticketmaster's Terms of Use and California's *Discover Bank* rule—which prohibits class-action waivers in consumer contracts of adhesion—governed and dictated that the arbitration agreement was also unenforceable for that reason. In short, because the company's terms of service contained a "mass arbitration protocol"—batching of claims and bellwether proceedings—the FAA did not protect the arbitration agreement from challenge under Discover Bank and class proceedings were therefore permitted. Plaintiffs' claims accrued during the period those same Terms of Use were in force. If Plaintiffs here were required to file individual claims in arbitration forum, they would be subjected to the same provisions found to be unconscionable and unenforceable by the Ninth Circuit in *Heckman*. As a result, they properly file their class claims in this court.  No claims are presented on behalf of Plaintiffs and the Class that are based on ticket transactions which occurred after August 11, 2025.

Answer: Defendants admit that Plaintiffs do not purport to bring claims based on ticket transactions which occurred after August 11, 2025.  The remaining allegations of Paragraph 31 of the FAC consist of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.

### NEW YORK ARTS & CULTURAL AFFAIRS LAW

32.    New York enacted Arts & Cultural Affairs Law § 25.07(4), effective on August 29, 2022, which provides that "[e]very operator or operator's agent of a place of entertainment, any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets … shall disclose the total cost of the ticket, inclusive of all ancillary fees

that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser. Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase." § 25.07(4). "[T]he price of the ticket shall not increase during the purchase process." *Id.*

Answer: Paragraph 32 of the FAC purports to quote from Section 25.07, which speaks for itself. To the extent a response is required, Defendants deny that the language quoted in Paragraph 32 is a complete and accurate recitation of Section 25.07 and on that basis denies the allegations of Paragraph 32 of the FAC.

33. In response to ticketing websites' communications to the State of New York's Division of Licensing Services as to the scope of the law, the Division of Licensing Services clarified: "the ticket purchasing process begins once a consumer visits a ticket marketplace and ***first sees a list of seat prices***."[4] (emphasis added).

Answer: Paragraph 33 of the FAC purports to quote from the source cited in Footnote 4 of the FAC, which speaks for itself. To the extent a response is required, Defendants respond that they lack knowledge or information sufficient to admit or deny the allegations of Paragraph 33 of the FAC and on that basis deny those allegations.

34. The Division of Licensing Services added that "[f]rom the moment the prospective purchaser assesses the [] ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself." *Id.* "When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser should not then have to search for the total price of the ticket as the purchaser proceeds through the purchasing process, it should continue to be readily available to the purchaser." *Id.* at 2.

Answer: Paragraph 34 of the FAC purports to quote from the source cited in Footnote 4 of the FAC, which speaks for itself. To the extent a response is required,

---

[4] *See* N.Y. Dep't of State, Div. Licens. Servs., Request for Additional Guidance – New York State Senate Bill S.9461, (Oct 24, 2022).

ANSWER TO FIRST AMENDED COMPLAINT

Defendants respond that they lack knowledge or information sufficient to admit or deny the allegations of Paragraph 34 of the FAC and on that basis deny those allegations.

35.     The statute does not speak to any purchasing limitations. By all accounts, the statute applies to: (i) New York residents who purchase tickets to an event in New York state (ii) New York residents who purchase tickets to a non-New York based event and (iii) non-New York residents who purchase tickets to an event in New York state. This is confirmed in New York Arts & Cultural Affairs Law § 25.01 which addresses the broad scope of the statute to include: (i) ticket sales by non-New York based sellers and (ii) ticket sales by non-New York purchasers to events in New York state, as follows:

> The legislature further finds that many ticket resellers advertise and sell tickets to places of entertainment within the boundaries of New York state often from locations outside the state, without adhering to the provisions of this article. The legislature objects to any claim that businesses domiciled outside New York state are exempted from this statute when selling tickets to events occurring in New York state, *regardless of the territories of origin of both the buyer and seller*. It is the legislature's intent that all governmental bodies charged with enforcement of this article, including the attorney general of New York state have the authority to regulate the activities of all persons reselling tickets to venues located within this state to the full extent of the state's powers under the federal and state constitutions and that this article be construed in light of this purpose.

(emphasis added)

Answer: Paragraph 35 of the FAC purports to quote from New York Arts & Cultural Affairs Law § 25.01, which speaks for itself.  To the extent a response is required, Defendants admit that Paragraph 35 of the FAC accurately quotes the text of New York Arts & Cultural Affairs Law § 25.01.  The remaining allegations of Paragraph 35 consist of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.

36.     New York Arts & Cultural Affairs Law § 25.33 provides that affected consumers are entitled to at least $50 in statutory damages, injunctive relief, plus attorney's fees and costs for each violation of § 25.04.

ANSWER TO FIRST AMENDED COMPLAINT

Notwithstanding any right of action granted to any governmental body pursuant to this chapter, any person who has been injured by reason of a violation of this article may bring an action in his or her own name to enjoin such unlawful act, an action to recover his or her actual damages or fifty dollars, whichever is greater, or both such actions. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Arts & Cult. Aff. Law § 25.33.

Answer: Paragraph 36 of the FAC purports to quote from and summarize New York Arts & Cultural Affairs Law § 25.33, which speaks for itself. To the extent a response is required, Defendants admit that Paragraph 36 of the FAC accurately quotes the text of New York Arts & Cultural Affairs Law § 25.33. The remaining allegations of Paragraph 36 consist of legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

37.    All Class members, including Plaintiffs are "person[s] who ha[ve] been injured by reason of a violation of this article" and entitled to "bring an action in his or her own name to enjoin such unlawful act, an action to recover his or her actual damages or fifty dollars, whichever is greater, or both such actions."

Answer: Denied.

## FACTUAL ALLEGATIONS

38.    Defendants are in the business of ticket sales and distribution, selling tickets for concerts, sporting events, and other events on their Websites (including the Ticketmaster mobile application) to consumers nationwide. Defendants sell tickets to consumers nationwide for events venued in New York state.

Answer: Defendants deny that tickets are sold directly through www.livenation.com. Defendants admit the remaining allegations of Paragraph 38 of the FAC.

39.    Since at least August 29, 2022, Defendants have failed to disclose the total cost of the ticket on the Website prior to the user selecting the ticket for purchase. Defendants initially display a lower price, only disclosing the applicable fees and total

ANSWER TO FIRST AMENDED COMPLAINT

selling price on subsequent screens during the checkout process.  Defendants' common practices continued at least through the time the initial complaint was filed in March 2025.

Answer: Denied.  Answering further, Defendants note that Ticketmaster has: (1) utilized "all-in" pricing for all events in New York since August 2022; and (2) adopted "all-in" pricing across its entire ticketing platform as of May 12, 2025, the effective date of the FTC's Trade Regulation Rule on Unfair or Deceptive Fees.

40.    The process described below is common. When a consumer goes to the Website and selects an event for which they want to consider purchasing tickets in New York state, they are presented with the following screen announcing that Ticketmaster now uses "All-in Pricing."



Answer: Paragraph 40 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 40 of the FAC, which speaks for itself.  To the extent a response is required, Defendants admit that the screenshot depicted in Paragraph 40 of the FAC depicts a screen that states "This event is using All-In Pricing."  Defendants deny that this screenshot accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state.  Defendants deny the remaining allegations, if any, of Paragraph 40 of the FAC.

ANSWER TO FIRST AMENDED COMPLAINT

41.     Defendants explain All-in Pricing as follows: "that means that you'll see cost of the ticket up front (before taxes)." That statement is inaccurate.

Answer: Paragraph 41 of the FAC purports to quote from the contents of the screenshot depicted in Paragraph 41 of the FAC, which speaks for itself.  To the extent a response is required, Defendants admit that Paragraph 41 accurately quotes the content of the screenshot depicted in Paragraph 41 of the FAC.  Defendants deny that the screenshot in Paragraph 41 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state. Defendants deny the remaining allegations, if any, of Paragraph 41 of the FAC.

42.     When the consumer hits continue, they are brought to the event's ticket listing page, where they can input the number of tickets they want and see a listing of the available tickets, seat location, and corresponding prices for the tickets. Also displayed is fine print notation indicating that "an order processing fee of up to $3.95 may be added to each order." However, this possible "order processing fee" is not included in the initially displayed price for the ticket. For instance, for the selected event (New York Rangers vs. Tampa Bay Lightning at Madison Square Garden in New York City on April 17, 2025) the initial screen shown to the consumer shows that the lowest priced ticket available is Section 419, Row 7, and is listed for $146.37.

Answer: Paragraph 42 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 42 of the FAC, which speaks for itself. To the extent a response is required, Defendants admit that the content displayed in the screenshot includes the text "an order processing fee of up to $3.95 may be added to each order" and that the lowest priced ticket available as shown in the screenshot is in Section 419, Row 7, with a price of $146.37. Defendants deny that the screenshot in Paragraph 42 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state. Defendants deny the remaining allegations, if any, of Paragraph 42 of the FAC.

43.    If the consumer wants to move forward with the purchase, they can click on the desired ticket offering for that seat in Section 419, Row 7, which takes them to the following screen. Notably, the subtotal is not $146.37 as initially listed under the "Lowest Price" column, nor as displayed above the subtotal, but instead **$150.32**. This screen does not contain any additional information as to the price increase. Thus, the consumer is only shown the true, higher price of the ticket after she selects the ticket on the initial screen.

Answer: Defendants lack information or knowledge sufficient to admit or deny whether the screenshot depicted in Paragraph 43 accurately shows the screen displayed after a consumer "click[ed] on the desired ticket offering" for the "seat in Section 419, Row 7," as depicted in Paragraph 42 of the FAC and on that basis denies that allegation. Answering further, Paragraph 43 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 43 of the FAC, which speaks for itself.  To the extent a response is required, Defendants admit that the content displayed includes a "Subtotal" of $150.32.  Defendants deny that the screenshot in Paragraph 43 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state.  Defendants deny the remaining allegations, if any, of Paragraph 43 of the FAC.

44.    When the consumer proceeds with the transaction by clicking the green "Next" button, they are shown the following page. The total displayed is $150.32, which is broken down into the "Verified Resale Ticket" ($123.00), "Service Fee" ($23.37), and "Order Processing Fee" ($3.95). Thus, the consumer is only shown the actual higher ticket amount including the "Order Processing Fee" on the subsequent checkout page, not the initial screen where the ticket was originally presented for sale. Such conduct violates the Arts & Cultural Affairs Law § 25.07(4).

19

ANSWER TO FIRST AMENDED COMPLAINT

Answer: Defendants lack information or knowledge sufficient to admit or deny whether the screenshot depicted in Paragraph 44 accurately shows the screen displayed after a consumer "proceeds with the transaction by clicking the green 'Next' button shown in the screenshot depicted in Paragraph 43 of the FAC and on that basis denies that allegation. Paragraph 44 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 44 of the FAC, which speaks for itself. To the extent a response is required, Defendants admit that the content displayed in the screenshots includes a total price of $150.32, which is broken down into "Verified Resale Ticket" ($123.00), "Service Fee" ($23.37), and "Order Processing Fee" ($3.95). Defendants deny that the screenshot in Paragraph 44 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state. Defendants deny the remaining allegations, if any, of Paragraph 44 of the FAC.

45.    The same type of pricing discrepancy occurs for other events sold on Ticketmaster, such as the July 23, 2025 Chris Stapelton Concert at the UBS Arena in Belmont Park, New York. As with the New York Rangers game tickets described above, customers who select the Chris Stapleton event are first shown an alert on "All-in Pricing."

ANSWER TO FIRST AMENDED COMPLAINT

Answer: Paragraph 45 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 45 of the FAC, which speaks for itself. To the extent a response is required, Defendants admit that the screenshot depicted in Paragraph 45 of the FAC depicts a screen that states "This event is using All-In Pricing." Answering further, Defendants deny that this screenshot accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state. Defendants deny the remaining allegations, if any, of Paragraph 45 of the FAC.

46.     Once a customer clicks the "Accept & Continue" button, the Website indicates that the lowest price of a single available ticket is located in Section 324, Row 5, priced at $83.55. The Website also says that "Price includes fees (before taxes if applicable). An order processing fee of up to $6.00 may be added to each order." Notably, the possible order processing fee for this event is greater than the possible $3.95 for the Rangers game.

21

ANSWER TO FIRST AMENDED COMPLAINT

Answer: Paragraph 46 of the FAC purports to summarize and quote from the contents of the screenshot depicted in Paragraph 46 of the FAC, which speaks for itself. To the extent a response is required, Defendants admit that the screenshot depicted in Paragraph 43 of the FAC includes the language "Price includes fees (before taxes if applicable)" and admit that the lowest priced ticket available as shown in the screenshot is Section 324, Row 4, with a price of $83.55. Defendants also admit that the order processing fee reflected in the screenshot in Paragraph 46 of the FAC is "greater than the possible $3.95" order processing fee reflected in screenshot depicted in Paragraph 42 of the FAC. Defendants deny that the screenshot in Paragraph 46 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state. Defendants deny the remaining allegations, if any, in Paragraph 46 of the FAC.

47.    By not including the actual amount of the "order processing fee" in the total ticket price on the first screen; by using the uncertain word "may" to describe the possible addition of the "order processing fee" (when Defendants know with certainty that it will be added); and by using smaller and less prominent font to describe it, Defendants violate Arts & Cultural Affairs Law § 25.07(4). When the customer clicks on the specific ticket,

ANSWER TO FIRST AMENDED COMPLAINT

they are shown the following screen. The subtotal for the ticket is not $83.55 as previously displayed, or as displayed above the subtotal. Instead, the subtotal is $89.55. Once again, this screen contains no information to explain the increase in price.



Answer: Paragraph 47 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 47 of the FAC, which speaks for itself.  To the extent a response is required, Defendants admit that the screenshot depicted in Paragraph 47 shows a subtotal of $89.55.  Defendants deny that the screenshot in Paragraph 47 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state.  Defendants deny the remaining allegations, if any, in Paragraph 47 of the FAC.

48.    When the customer clicks the "Next" button, they are taken to the final checkout screen. The total price is $91.05, including $63.75 for the ticket price, $19.80 in

ANSWER TO FIRST AMENDED COMPLAINT

"Service Fee", $6.00 in "Order Processing Fee" and $1.50 in tax. Customers are thus unable to view the amount of the "Order Processing Fee" that is added to the total ticket price until the final checkout screen.



Answer: Defendants lack information or knowledge sufficient to admit or deny whether the screenshot depicted in Paragraph 48 accurately shows the screen displayed after a consumer "click[ed] the green 'Next' button" shown in the screenshot depicted in Paragraph 47 of the FAC and on that basis deny that allegation.  The remainder of Paragraph 48 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 48 of the FAC, which speaks for itself.  To the extent a response is required, Defendants admit that the content displayed in the screenshots includes a total price of $91.05, which is broken down into $63.75 for the ticket price, $19.80 in "Service Fee", $6.00 in "Order Processing Fee" and $1.50 in tax.  Defendants deny that the screenshot in Paragraph 48 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state. Defendants deny the remaining allegations, if any, of Paragraph 48 of the FAC.

49.    Another example of pricing discrepancy is seen in the Katy Perry concert on August 11, 2025 at Madison Square Garden, New York. As with the previous events, Customers who click on the Katy Perry concert are first shown a notice on "All-in Pricing."

Answer: Paragraph 49 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 49 of the FAC, which speaks for itself. To the extent a response is required, Defendants admit that the screenshot depicted in Paragraph 49 of the FAC depicts a screen that states "This event is using All-In Pricing." Defendants deny that this screenshot accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state. Defendants deny the remaining allegations, if any, of Paragraph 49 of the FAC.

50.    Next, customers are shown that the "lowest price" single ticket available is in Section 312, Row 1, listed at $161.00. The screen also shows that "Price includes fees (before taxes if applicable). An order processing fee of up to $3.95 may be added to each order."

25

ANSWER TO FIRST AMENDED COMPLAINT

Answer: Paragraph 50 of the FAC purports to quote from the contents of the screenshot depicted in Paragraph 50 of the FAC, which speaks for itself.  To the extent a response is required, Defendants admit that the screenshot depicted in Paragraph 50 shows that the "lowest price" ticket available is in Section 312, Row 1, at a price of $161.00." Defendants also admit that the content in the screenshot depicted includes the following language: "Price includes fees (before taxes if applicable).  An order processing fee of up to $3.95 may be added to each order."  Defendants deny that the screenshot in Paragraph 50 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state.  Defendants deny the remaining allegations, if any, of Paragraph 50 of the FAC.

51.    Upon clicking on that ticket, customers are shown a subsequent screen which displays the subtotal as $164.95. As with the previously discussed events, there is no explanation given for the price increase on this screen.



Answer: Defendants lack information or knowledge sufficient to admit or deny whether the screenshot depicted in Paragraph 51 accurately shows the screen displayed "[u]pon clicking on that ticket" shown in the screenshot depicted in Paragraph 51 of the

ANSWER TO FIRST AMENDED COMPLAINT

FAC and on that basis denies that allegation.  Paragraph 51 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 51 of the FAC, which speaks for itself.  To the extent a response is required, Defendants admit that the content displayed in the screenshots includes a subtotal of $164.95.  Defendants deny that the screenshot in Paragraph 51 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state.  Defendants deny the remaining allegations, if any, of Paragraph 51 of the FAC.

52.    When the consumer clicks the "Next" button, they are taken to the final checkout screen, where the total price is $164.95, which includes $140 in ticket price, $21 in "Service Fee", and $3.95 for an "Order Processing Fee." This final checkout screen is the first time the consumer can see the amount and applicability of the "Order Processing Fee."



Answer: Defendants lack information or knowledge sufficient to admit or deny whether the screenshot depicted in Paragraph 52 of the FAC accurately shows the screen displayed "[w]hen the consumer click[ed] the 'Next' button" shown in the screenshot depicted in Paragraph 51 of the FAC and on that basis denies that allegation.  The remainder of Paragraph 52 of the FAC purports to summarize the contents of the screenshot depicted in Paragraph 52 of the FAC, which speaks for itself.  To the extent a response is

ANSWER TO FIRST AMENDED COMPLAINT

required, Defendants admit that the content displayed in the screenshot shows a total price of $164.95, which is broken down into $140 in ticket price, $21 in "Service Fee", and $3.95 for an "Order Processing Fee."  Defendants deny that the screenshot in Paragraph 52 of the FAC accurately depicts any stage of the current ticketing purchase flow a user would experience when purchasing tickets to an event in New York state.  Defendants deny the remaining allegations, if any, of Paragraph 52 of the FAC.

53.     As shown, Ticketmaster's general practice at many New York venues is not to disclose the "total cost" including "all ancillary fees that must be paid in order to purchase the ticket" "prior to the ticket being selected for purchase" as required by §25.07. Rather, the initially displayed ticket price is lower than the total cost, which is only disclosed on subsequent screens on the Website.

Answer: Denied.  Answering further, Defendants note that Ticketmaster has: (1) utilized "all-in" pricing for all events in New York since August 2022; and (2) adopted "all-in" pricing across its entire ticketing platform as of May 12, 2025, the effective date of the FTC's Trade Regulation Rule on Unfair or Deceptive Fees.

54.     While the opening screen may provide that "an order processing fee of up to $3.95 may be added to each order" (amount varying with event), such statements do not comply with New York Arts & Cultural Affairs Law § 25.07. Any such reference does not comply with § 25.07, inter alia, as (1) through use of the word "may", the reference to the order processing fee is presented as an uncertainty, when Defendants, who control and program the Website, already know that it will be imposed, but do not include the ancillary fee in the listed ticket price; (2) "the total cost of the ticket, inclusive of all ancillary fees" must be listed on the opening ticket listing screen; (3) "the price of the ticket shall not increase during the purchase process", and; (4) the reference is in small in descript text, in contrast to the ticket price which is prominently featured in larger, bold and colored font to stand out and be far more noticeable to the consumer.

ANSWER TO FIRST AMENDED COMPLAINT

Answer: Paragraph 54 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 54 of the FAC.

55.    Recent cases in New York federal courts have upheld similar claims made against other company defendants. *See, Vassell v. SeatGeek, Inc.*, 2025 WL 240912, *12 (E.D.N.Y., Jan. 17, 2025) (denying motion to dismiss because "plaintiffs suffered economic harm as a result of defendant's alleged unlawful failure to disclose 'the total cost of the ticket… in a clear and conspicuous manner' at the 'first point that ticket prices [were] displayed on their website.'"); *Berryman v. Reading International, Inc.*, 2025 WL 315403 (S.D.N.Y., Jan. 28, 2025) (denying motion to dismiss even though defendant's website discloses the service fee on a page prior to the final "order confirmation" page because the fee was not disclosed prior to the ticket being selected for purchase, as required by § 25.07(4).).

Answer: Paragraph 55 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 55 of the FAC.

## CLASS ALLEGATIONS

56.    Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated as a class action pursuant to California Code of Civil Procedure § 382 and any other applicable rule of civil procedure. Plaintiff seeks to represent the following putative class:

> All residents of the United States, except residents of New York state, who purchased tickets through Defendants' Website(s) to an event venued in New York state, and were charged one or more ancillary Fees that were not included in the total price listed on the initial ticket listing page for the event on the Website(s), during the Class Period.

(the "Class").

Answer: Defendants admit that Plaintiffs purport to bring this lawsuit as a class action and that Plaintiffs seek to represent the putative class described in Paragraph 56 of

29
ANSWER TO FIRST AMENDED COMPLAINT

the FAC.  Defendants deny that this case may be maintained as a class action and that class certification is appropriate as to any putative class.

57.    In the alternative, Plaintiffs seek certification of a California subclass defined as

> All residents of California, who purchased tickets through Defendants' Website(s) to an event venued in New York state, and were charged one or more ancillary Fees that were not included in the total price listed on the initial ticket listing page for the event on the Website(s), during the Class Period.

(the "California Subclass").[5]

Answer: Defendants admit that Plaintiffs purport to bring this lawsuit as a class action and that Plaintiffs seek to represent the putative subclass described in Paragraph 57 of the FAC in the alternative.  Defendants deny that this case may be maintained as a class action and deny that class certification is appropriate as to any putative class.

58.    The "Class Period" beings on August 29, 2022, and continues through August 11, 2025.

Answer: Defendants admit that Plaintiffs purport to define the Class Period as described in Paragraph 58 of the FAC but deny that this case may be maintained as a class action and deny that class certification is appropriate as to any putative class.

59.    Specifically excluded from the Class are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

Answer: Defendants admit that Plaintiffs purport to exclude the individuals identified in Paragraph 59 of the FAC from the putative classes they seek to certify, but they deny that class certification is appropriate as to any putative class.

---

[5] All references to the Class herein also apply to the California Subclass.

ANSWER TO FIRST AMENDED COMPLAINT

60.    Plaintiffs reserve the right to amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues.

Answer: Defendants admit that Plaintiffs purport to reserve the right to "amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues," but they deny that Plaintiffs are entitled to do so or that certification of any putative class is appropriate.  Defendants deny the remaining allegations, if any, of Paragraph 60 of the FAC.

61.    This action may be certified as a class action under California Code of Civil Procedure § 382 and/or any other applicable rule of civil procedure because it satisfies all requirements of rules governing class certification including any numerosity, commonality, typicality, adequacy, and superiority requirements.

Answer: Paragraph 61 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 61 of the FAC.  Answering further, Defendants note that Section 382 of the California Code of Civil Procedure is not applicable to this action, which is pending in federal court.

62.    **Numerosity.** The Class's members are so numerous that joinder of each individual class ember would be impracticable and unfeasible, and the disposition of their claims as a class will benefit the parties, the Court, and the interests of justice. Upon information and belief, Defendants sells approximately 500 million tickets per year in the United States. Defendants likely sell 30 million or more tickets to events in New York State each year. The class certainly contains many thousands of individuals who do not reside in New York but purchased tickets for events that were venued in New York state. The precise number of the Class Members should be readily available from a review of Defendants' business records but is expected to exceed 5,000 persons.

Answer: Defendants lack sufficient information to admit or deny the allegations that "Defendants sells approximately 500 million tickets per year in the United States" and

"likely sell 30 million or more tickets to events in New York State." The remainder of Paragraph 62 of the FAC consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations of Paragraph 62 of the FAC and deny that certification of any putative class is appropriate.

63. **Ascertainability.** The proposed Class is ascertainable from objective criteria. Specifically, on information and belief, Defendants maintain business records, which include the names, contact information, e-mail addressess and other identifying information of members of the proposed Class, from which all members of the Class could be notified. Among other things, in order to purchase tickets on the Websites, Class members must establish an online account with Defendants. On information and belief, Defendants maintain sales records for account holders that show the ticket prices and ancillary Fees charged on ticket transactions made within the Class Period, including the identity, address, and e- mail address of the purchaser. All Class members are persons with Ticketmaster and/or Live Nation accounts.

Answer: Defendants admit that they maintain sales records for users who purchase tickets through Ticketmaster's website. The remaining allegations of Paragraph 63 of the FAC consist of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations of Paragraph 63 of the FAC and deny that certification of any putative class is appropriate.

64. **Commonality and Predominance.** There is a well-defined community of interest among the Class Members and common questions of both law and fact predominate over questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants failed to disclose the total cost of the ticket to Class Members, including all ancillary fees, prior to the tickets being selected for purchase in violation of New York Arts & Cultural Affairs Law § 25.07(4);

ANSWER TO FIRST AMENDED COMPLAINT

b.    Whether the displayed price of Defendants' tickets increases during the Class members' purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4);

c.    Whether Defendants failed to disclose all service charges and ancillary fees to members of the Class in a clear and conspicuous manner in violation of New York Arts & Cultural Affairs Law § 25.07(4); and

d.    The relief due to members of the Class, including statutory damages and injunctive relief.

Answer: Paragraph 64 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 64 of the FAC and deny that certification of any putative class is appropriate.

65.    **Typicality.** Plaintiffs' claims are typical of those of the Class Members in that they arise out of the same course of conduct of Defendants, who have policies and practices of deceptive pricing that violate § 25.07(4). Plaintiffs' claims are further typical in that Plaintiffs seek the same relief as all other Class Members and under the same theories of recovery. The effort Plaintiffs undertake to pursue their own claim will significantly benefit the Class Members because of the identical nature of the issues across the Class. Unless corrected and enjoined, Plaintiffs, like other Class members, remain at risk of further violations of the practices described.

Answer: Paragraph 65 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 65 of the FAC and deny that certification of any putative class is appropriate.

66.    **Adequacy of Representation.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs share a common interest with the Class Members, with respect to the conduct of the Defendants herein and redress of injury. Plaintiffs have suffered an injury-in-fact as a result of the conduct of the Defendants, as alleged herein. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex consumer fraud and class actions. Plaintiffs and

their counsel intend to prosecute this action vigorously and faithfully for the benefit of the Class Members. Plaintiffs have no interests contrary to the Class Members, and will fairly and adequately protect the interests of the Class.

Answer: Paragraph 66 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 66 of the FAC and deny that certification of any putative class is appropriate.

67.   **Community of Interest.** The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiffs have claims typical of the Class Members.

Answer: Paragraph 67 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 67 of the FAC and deny that certification of any putative class is appropriate.

68.   **Superiority.** The certification of the Class in this action is superior to the litigation of a multitude of cases by members of the putative Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are members of the Class who are unlikely to join or bring an action due to, among other reasons, their reluctance to spend large sums of time and/or money to recover what may be a relatively modest individual recovery. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received. The damages and other potential recovery for each individual member of the Class are modest relative to the substantial burden and expense of individual prosecution of these claims.

Answer: Paragraph 68 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 68 of the FAC and deny that certification of any putative class is appropriate.

ANSWER TO FIRST AMENDED COMPLAINT

69.     A class action is also superior because Defendants' common Terms of Use (effective date July 2, 2021)[6] that was in effect when class members' claims accrued, contain a common arbitration clause which has been found to be unconscionable and unenforceable. *See Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024).  The Court in *Heckman* further confirmed that Defendants' arbitration clause did not contemplate bilateral arbitration for consumers, was not preempted by the FAA and therefore California's *Discovery Bank* rule prohibiting class action waivers applied. Id. at 689 ("We also hold, based on an alternate and independent ground, that the application of California unconscionability law to the arbitration agreement at issue here is not preempted by the FAA. We agree with our concurring colleague that the FAA simply does not apply to and protect the mass arbitration model set forth in Ticketmaster's Terms and New Era's Rules. Because the FAA does not apply, the rule of *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), governs the case before us. In *Discover Bank*, the California Supreme Court held that class action waivers in consumer contracts of adhesion are unconscionable under California law. *Id.*, 30 Cal.Rptr.3d 76, 113 P.3d at 1110).

Answer: Paragraph 69 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 69 of the FAC and deny certification of any putative class is appropriate.

70.     In the alternative, the above-referenced Class may be certified because:

a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with

---

[6] Found at https://help.ticketmaster.com/hc/en-us/articles/10468830739345-Terms-of-Use?_gl=1*1d9abe0*_gcl_au*NjEzNDAzNjQ1LjE3MzM1MDMwNDk.*_ga*MjEzNjU3Njk4MS4xNzE2NTgyNzM5*_ga_C1T806G4DF*MTczODYyMzc1NS45NC4xLjE3Mzg2MjY3MjIuMjAuMC4w*_ga_H1KKSGW33X*MTczODYyMzc1NS44Mi4xLjE3Mzg2MjY3MjEuMjEuMC4w&_ga=2.192195242.1662087761.1738606630-2136576981.1716582739 . (last accessed February 3, 2025)

---

ANSWER TO FIRST AMENDED COMPLAINT

respect to individual Class members' claims which would establish incompatible standards of conduct for Defendants;

    b.    The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the Class who are not parties to the adjudications, or which would substantially impair or impede the ability of other members to protect their interests; and

    c.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

Answer: Paragraph 70 of the FAC consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 70 of the FAC and deny certification of any putative class is appropriate.

### FIRST CAUSE OF ACTION

**Violation of the New York Arts & Cultural Affairs Law § 25.01 *et seq.***

71. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

Answer: Defendants incorporate their responses to all preceding paragraphs of the FAC as if fully set forth herein.

72. Plaintiffs bring this claim individually and on behalf of all members of the Class.

Answer: Defendants admit that Plaintiffs purport to bring this case "on behalf of all members of the Class," but they deny that this case is amenable to class certification.

73. Defendants engaged in the above-described practices during the Class Period which caused injury and loss to Plaintiffs and the Class.

Answer: Denied.

74. At all times during the Class Period, Defendants sold tickets to events venued in New York state on their online Websites and platforms to consumers throughout the

ANSWER TO FIRST AMENDED COMPLAINT

United States, including members of the Class, in a common manner where all ancillary Fees (including but not limited to order processing fees, service fees, delivery fees, order processing fees, facility fees and/or other fees) were not fully disclosed by Defendants on the first Website screen offering the tickets at a specific selling price. Instead, Defendants only disclosed the ancillary Fees being added to the final price on subsequent Website screens and/or disclosures. Distinct violations of New York Arts & Cultural Affairs Law § 25.01 et seq. resulted from each ticket sold to Class members in this manner.

Answer: Denied.

75. Pursuant to New York Arts & Cultural Affairs Law § 25.07(4), both Defendants operate platform[s] that facilitates the sale or resale of tickets." This includes the Websites.

Answer: Paragraph 75 of the FAC consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 75 of the FAC.

76. Pursuant to § 25.07(4), Defendants have a statutory obligation to "disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser" at the first point that ticket prices are displayed on their website.

Answer: Paragraph 76 of the FAC consists of a legal conclusion to which no response is required.  To the extent a response is required, deny the allegations of Paragraph 76 of the FAC.

77. Defendants, through their failure to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" until after a ticket is selected for purchase, have violated New York Arts & Cultural Affairs Law § 25.07(4) with respect to each ticket sale by Plaintiffs and members of the Class during the Class Period.

Answer: Denied.

78. Moreover, Defendants violated § 25.07(4) by increasing the total cost of tickets during the purchase process with respect to Plaintiffs' and each Class members' ticket purchase(s) to an event venued in New York state.

Answer: Denied.

79. Furthermore, Defendants violated New York Arts & Cultural Affairs Law § 25.07(4) by failing at the first stage to "disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser."

Answer: Denied.

80. Defendants' added "Fees", including but not limited to the order processing fee, constitute an "ancillary fee[] that must be paid in order to purchase the ticket." § 25.07(4).

Answer: Paragraph 80 of the FAC consists of a legal conclusion to which no response is required. To the extent a response is required, Defendants lack sufficient information to admit or deny the allegations of Paragraph 80 of the FAC and on that basis deny those allegations.

81. Plaintiffs and members of the Class purchased tickets to events venued in New York state through Defendants' websites and were forced to pay one or more of Defendants' added ancillary Fees, including order processing fees, in order to secure their tickets. The ancillary Fees imposed by Defendants were mandatory charges imposed by Defendants and not subject to individual negotiation. Plaintiffs and the Class were harmed by paying at least one added ancillary Fee charge that was not disclosed to Plaintiffs at the beginning of the purchase process, which is deceptive conduct and unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4). Defendants' above-described conduct injured and damaged Plaintiffs and each member of the Class each time they purchased a ticket to an event venued in New York during the Class Period.

Answer: Defendants lack information sufficient to admit or any whether "Plaintiffs and members of the Class purchased tickets to events venued in New York state through

ANSWER TO FIRST AMENDED COMPLAINT

Defendants' websites" and paid "one or more of Defendants' added ancillary Fees, including order processing fees, in order to secure their tickets" and on that basis denies that allegation.  Defendants deny that, to the extent any plaintiff or putative class member did purchase tickets through the Ticketmaster website, they were "forced" to pay any "ancillary Fee" as any purchase made through the Ticketmaster website is completely voluntary.  The remaining allegations of Paragraph 81 of the FAC consist of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.

82.    Indeed, this is precisely the type of pricing deception the statute was designed to prevent. The Division of Licensing Services, in response to an inquiry from ticketing websites about the scope of the statute, stated clearly that "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices" and that "[f]rom the moment the prospective purchaser assesses the… ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself."[7]

Answer: Defendants deny that they engage in "pricing deception."  Plaintiffs' allegation that "this is precisely the type of pricing deception" the New York Arts & Cultural Affairs Law § 25.07(4) "was designed to prevent" is a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that allegation.  The remainder of Paragraph 82 of the FAC purports to quote from a statement made by the Division of Licensing Services, which speaks for itself.  To the extent a response is required, Defendants respond that they lack sufficient information to admit or deny the remaining allegations of Paragraph 82 of the FAC and on that basis deny those allegations.

83.    Plaintiffs, on behalf of themselves and the Class, seek to enjoin the unlawful acts and practices described herein; to recover monetary relief including statutory damages

---

[7] *See* N.Y. Dep't of State, Div. Licens. Servs., Request for Additional Guidance – New York State Senate Bill S.9461, (Oct. 24, 2022).

of fifty dollars per violation; to recover reasonable attorneys' fees and costs; and for all other relief that is just and equitable under the circumstances and allowed by law. *See* N.Y. Arts & Cult. Aff. Law § 25.33.

Answer: Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 83 but deny that Plaintiffs or any member of the putative class are entitled to such relief. Defendants deny the remaining allegations, if any, of Paragraph 83 of the FAC.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly aggrieved persons in the Class, pray for judgment against Defendants as follows:

1. For an order certifying that the action may be maintained as a class action on behalf of the above-defined Class (or alternatively, the California Subclass) and appointing Plaintiffs and their undersigned counsel to represent the Class in this litigation;

2. For an order declaring that the acts and practices of Defendants constitute violations of the statute referenced herein and enjoining such practices;

3. For an order finding in favor of Plaintiffs and the Class;

4. For monetary relief, including statutory damages in amounts to be determined;

5. For prejudgment interest on all amounts awarded;

6. For injunctive relief as pleaded or as the Court may deem proper;

7. For an award of reasonable attorneys' fees and costs; and

8. For such other and further relief as the Court may deem just and proper.

Answer: The Prayer for Relief consists of a summary of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Defendants admit that Plaintiffs purport to seek the relief set forth in the Prayer for Relief in the FAC, but they deny that Plaintiffs or any putative class member is entitled to any such relief and pray that Plaintiffs take nothing by way of their complaint.

ANSWER TO FIRST AMENDED COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of their individual and Class claims to the extent authorized by law.

Answer: Defendants demand a jury trial on all claims, causes of action, and issues so triable.

## STATEMENT OF DEFENSES

The following statement of defenses is not intended to characterize any particular defense as "affirmative," nor to specify which party bears the burden of proof or persuasion on any particular defense.

## FIRST DEFENSE

## (COMPLIANCE WITH APPLICABLE LAWS AND REGULATIONS)

Plaintiffs' claims are barred, in whole or in part, because Defendants' pricing and purchase flow complied with all applicable laws, regulations, and guidance.

## SECOND DEFENSE

## (NO RELIANCE)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not purchase the Products in reliance on the alleged misrepresentations or omissions challenged in the FAC. Plaintiffs also knew, at all relevant times, that Defendants charged fees in connection with ticket purchases and therefore could not have justifiably relied on the alleged misrepresentations or omissions asserted in the FAC.

## THIRD DEFENSE

## (ADEQUATE REMEDY AT LAW)

Plaintiffs are not entitled to seek restitution or any other equitable remedies because, to the extent they are entitled to any remedy at all, they possess an adequate remedy at law.

## FOURTH DEFENSE

## (WAIVER)

Plaintiffs' claims are barred in whole or in part by the doctrine of waiver. At all relevant times, Defendant's websites adequately disclosed the relevant fees for ticket

41

ANSWER TO FIRST AMENDED COMPLAINT

purchases. Because Plaintiffs knew or should have known about the fees, their claims are barred, in whole or in part, by the doctrine of waiver.

### FIFTH DEFENSE

### (ESTOPPEL)

Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel. At all relevant times, Defendant's websites adequately disclosed the relevant fees for ticket purchases.  Because Plaintiffs knew or should have known about the fees, their claims are barred, in whole or in part, by the doctrine of estoppel.

### SIXTH DEFENSE

### (MOOTNESS)

Plaintiffs' claims for injunctive relief are barred in whole or in part by the doctrine of mootness based on Defendants' all-in pricing policy that went into effect on or around May 12, 2025, as well as Defendants' adoption of all-in pricing in New York on or around August 10, 2025.

### SEVENTH DEFENSE

### (NO INJURY/LACK OF STANDING)

Plaintiffs' claims are barred in whole or in part because they suffered no injury as a result of the alleged misrepresentations or omissions challenged in the FAC or any other alleged acts or omissions of Defendants.

### EIGHTH DEFENSE

### (NO DECEPTION)

Plaintiffs' claims are barred in whole or in part because no reasonable consumer would be deceived by the purchase flow and the fee disclosures on Defendants' websites.

### NINTH DEFENSE

### (VOLUNTARY PAYMENT DOCTRINE)

Plaintiffs' claims are barred in whole or in part by the voluntary payment doctrine because Plaintiffs paid for tickets purchased through Defendants websites voluntarily.

ANSWER TO FIRST AMENDED COMPLAINT

## TENTH DEFENSE

## (STATUTES OF LIMITATIONS)

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations.

## ELEVENTH DEFENSE

## (FAILURE TO MITIGATE)

Plaintiffs are barred in whole or in part from any recovery because of Plaintiffs' failure to mitigate or eliminate their damages, if any, and any recovery by Plaintiffs should be reduced or denied accordingly.

## TWELFTH DEFENSE

## (EXTRATERRITORIALITY)

Plaintiffs' state-law claims are barred, in whole or in part, to the extent Plaintiffs seek to apply state law to transactions that occurred outside of the relevant state.

## THIRTEENTH DEFENSE

## (RESERVATION OF ADDITIONAL DEFENSES)

Defendants hereby reserve the right to amend their Answer to raise additional defenses as they become available or apparent to Defendants through discovery in this matter or otherwise.

Dated: December 5, 2025

JENNER & BLOCK LLP

By: */s/ Brandon D. Fox*
Brandon D. Fox
Alison I. Stein
Alexander M. Smith
Cayman C. Mitchell
Kristen L. Green
Eric W. Wolff

Attorneys for Defendants
Live Nation Entertainment, Inc. and
Ticketmaster, L.L.C.

43

ANSWER TO FIRST AMENDED COMPLAINT