JENNER & BLOCK LLP
Brandon D. Fox (SBN 290409)
BFox@jenner.com
Alexander M. Smith (SBN 295187)
ASmith@jenner.com
Kristen L. Green (SBN 328618)
KGreen@jenner.com
Eric W. Wolff (SBN 341180)
Eric.Wolff@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:    (213) 239-5100
Facsimile:    (213) 239-5199

Alison I. Stein (*pro hac vice*)
AStein@jenner.com
Cayman C. Mitchell (*pro hac vice*)
CMitchell@jenner.com
1155 Avenue of the Americas
New York, NY  10036-2711
Telephone:    (212) 891-1600
Facsimile:    (212) 891-1699

Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster, L.L.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ABBOTT, et al. individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>LIVE NATION ENTERTAINMENT, INC., et al.<br><br>      Defendants. | Case No. 2:25-cv-10757-GW (KSx)<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Hon. George H. Wu<br>Courtroom: 9D (First Street)<br>Date:   June 15, 2026<br>Time:   8:30 a.m. |

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   RELEVANT BACKGROUND.............................................................................3

    A.    Ticketmaster's Purchase Flow ................................................................4

    B.    Plaintiffs' Purchases and Claims............................................................7

    C.    Plaintiffs' Claim Against Ticketmaster...................................................7

III.  LEGAL STANDARD .............................................................................................8

IV.   ARGUMENT...........................................................................................................9

    A.    Ticketmaster Complied With NYACAL § 25.07(4)...................................10

        1.    Ticketmaster disclosed all fees prior to ticket selection. ...................10

        2.    Ticketmaster's purchase flow complied with NYACAL § 25.07(4). ...............................................................................................12

        3.    Plaintiffs' contrary construction fails.................................................13

    B.    Ticketmaster Is Also Entitled to Summary Judgment Because Neither Plaintiff Experienced the Challenged Pricing Practice. ..........................................16

V.    CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................8

*Baxter v. Intelius, Inc.*,
2010 WL 3791487 (C.D. Cal. Sep. 16, 2010) .............................................................11

*Berryman v. Reading International, Inc.*,
763 F. Supp. 3d 596 (S.D.N.Y. 2025) .......................................................................13

*Downey v. Public Storage, Inc.*,
44 Cal. App. 5th 1103 (2020) ....................................................................................16

*English v. Apple Inc.*,
2016 WL 1188200 (N.D. Cal. Jan. 5, 2016).....................................................16, 17, 18

*Frias v. City Winery New York, LLC*,
2024 WL 4495177 (N.Y. Sup. Ct. Oct. 11, 2024)......................................................12

*Guardian Media Techs., Inc. v. Amazon.com, Inc.*,
2015 WL 12656953 (C.D. Cal. Apr. 1, 2015)..............................................................8

*Hoffman v. Tonnemacher*,
593 F.3d 908 (9th Cir. 2010) ...............................................................................8, 9

*In re NJOY, Inc. Consumer Class Action Litig.*,
120 F. Supp. 3d 1050 (C.D. Cal. 2015) ......................................................................16

*Reinhardt v. Gemini Motor Transp.*,
879 F. Supp. 2d 1138 (E.D. Cal. 2012) ......................................................................16

*S. Cal. Darts Ass'n v. Zaffina*,
762 F.3d 921 (9th Cir. 2014) .....................................................................................8

*Sanchez v. Aberdeen Sch. Dist. No. 5*,
2023 WL 2682115 (W.D. Wash. Mar. 29, 2023).........................................................8

*Vassell v. SeatGeek, Inc.*,
2025 WL 240912 (E.D.N.Y. Jan. 17, 2025).................................................................13

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

**Statutes**

NYACAL § 25.07(4) ...............................................................................................*passim*

**Court Rules**

Fed. R. Civ. P. 56(a)............................................................................................. 8

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

## I.   **INTRODUCTION**

This is one of three lawsuits pending before this Court challenging Ticketmaster's alleged practice of failing to disclose the "all-in" price of tickets to live events at the outset of each transaction.  Plaintiffs Kalen Cooper and Marshall Altier assert a single claim for alleged violations of New York's all-in pricing law—Section 25.07(4) of the New York Arts & Cultural Affairs Law ("NYACAL")—on behalf of a putative class of consumers who reside outside of New York but bought tickets to live events at venues in New York.

Unlike the plaintiffs in the other two related cases (*Madrigal* and *Holmes*), Plaintiffs here do *not* allege that Ticketmaster failed to disclose fees at the beginning of each transaction.  During the class period, Ticketmaster charged two types of fees: (1) fees that applied to every ticket; and, sometimes, (2) an order processing fee, which applied only once per transaction and generally did not exceed $6.00.  Plaintiffs *concede that Ticketmaster disclosed both fee types before a consumer ever selected a ticket*.  Specifically, Plaintiffs concede that Ticketmaster disclosed (1) the price of each ticket inclusive of per-ticket fees; and (2) the maximum amount of any order processing fee immediately above ticket prices.

Ticketmaster cannot violate a statute requiring all-in prices by displaying all-in prices, as Ticketmaster clearly did.  As shown in the screenshot below, on the right-hand

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)



side of Ticketmaster's ticket selection page, Ticketmaster disclosed ticket prices including fees and alerted the consumer that an order processing fee of up to $3.95 may apply.

Remarkably, Plaintiffs allege that the nationwide class is entitled to $50 in statutory damages per transaction because (they claim) Ticketmaster should not have disclosed the per-ticket price and order processing fee as *separate* line items, but should have instead added them together and presented a single number. That theory is untethered from the statutory text. The statute requires that the "total cost of the ticket, inclusive of all ancillary fees" be "displayed in the ticket listing prior to the ticket being selected for purchase" and

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

that "[t]he price of the ticket shall not increase during the purchase process." NYACAL § 25.07(4). Plaintiffs' allegations establish, and discovery has confirmed, that Ticketmaster's purchase flow guaranteed that Plaintiffs and all putative class members received full disclosure of the total amount they would need to pay for tickets (including all fees) before selecting tickets, and that the ticket price never increased. Thus, Defendants are entitled to summary judgment because the undisputed facts confirm that Ticketmaster's purchase flow complied with Section 25.07(4).

This Court should also grant summary judgment because neither Plaintiff experienced the conduct they challenge. Ms. Cooper did not pay an order processing fee, and Mr. Altier did not buy his tickets on Ticketmaster at all. Because Plaintiffs did not experience the pricing practice they challenge, they cannot assert violations of Section 25.07(4)—either on their own behalf or on behalf of the putative class.

## II.    RELEVANT BACKGROUND

The cost of each ticket sold on the Ticketmaster marketplace includes the face value of the ticket (which are set by and exclusively retained by artists), fees (which are set by Ticketmaster's clients, including event organizers and venues, and largely retained by those clients), and, where applicable, taxes. Statement of Uncontroverted Facts ("SUF") No. 1.

Ticketmaster generally charges fees on a per-ticket basis, meaning that each individual ticket has fees associated with that ticket. SUF No. 5. Per-ticket fees usually consist of "service fees," which are generally shared between the parties involved in organizing events (including Ticketmaster), and sometimes a "facility charge," which is determined by and exclusively retained by the venue hosting the event. SUF No. 6.

During the class period, Ticketmaster sometimes also charged an "order processing fee." SUF No. 10. Ticketmaster charged this fee on a per-order basis, meaning that a given transaction had an associated fee that would only be charged once, regardless of the number

of tickets purchased.  SUF Nos. 68–69, 75.[1]  Although the amount of the order processing fee did not vary based on the number of tickets purchased, whether an order processing fee was charged or the amount of that fee would sometimes vary based on the *type* of tickets purchased, for instance, primary versus resale tickets.  SUF Nos. 69–73.  Where an order processing fee applied, it generally did not exceed $6.00.  SUF No. 12.

### A.   Ticketmaster's Purchase Flow

Ticketmaster has used "all-in" pricing for all events that have taken place in New York State since August 29, 2022.  SUF No. 9.  Since that time and throughout the class period, consumers have seen the total cost of their ticket, inclusive of all fees, on the initial ticket selection page of Ticketmaster's purchase flow before they select tickets.  *Id.* Specifically, Ticketmaster disclosed the total amount a consumer would need to pay to purchase a ticket by: (1) displaying a ticket price that incorporated the face value and all per-ticket fees; and (2) simultaneously disclosing the maximum amount of any order processing fee that might apply.  SUF No. 10.

For example, the following is the ticket listing page for a Katy Perry concert at Madison Square Garden in New York City taken in or around March 2025, which the

---

[1] By May 12, 2025, Ticketmaster ceased charging order processing fees on all transactions in New York and nationwide. SUF Nos. 9, 14.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

parties agree is representative of the purchase flow that class members saw during the class period, *see* SUF Nos. 22–24:

On the first page of the purchase flow, Ticketmaster displayed the price of seats in Section 312, Row 1 for the Katy Perry concert as $161.00, and Ticketmaster informed the customer that an order processing fee of up to $3.95 may also apply. The $161.00 price was inclusive of the face value and all per-ticket fees, and a consumer would immediately know the total transaction price for one ticket could be as high as $164.95 (the sum of the

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

$161.00 ticket price shown and the maximum $3.95 order processing fee). If a consumer were to select only a single seat in Section 312, Row 1, and an order processing fee applied, the parties agree that page two of Ticketmaster's purchase flow would display as below, *see* SUF Nos. 25–27:



On this second page of Ticketmaster's purchase flow during the class period, Ticketmaster would show the consumer the total transaction price inclusive of any order processing fee. In this case, the total transaction price would be $164.95, which is simply

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

the sum of the $161.00 ticket price previously shown and the maximum $3.95 order processing fee previously shown. That subtotal would be the total cost exclusive of taxes.

## B.    Plaintiffs' Purchases and Claims

Both named Plaintiffs allegedly obtained tickets via Ticketmaster for events in New York during the alleged class period. Ms. Cooper alleges harm from a single transaction: a January 7, 2025, purchase of two tickets to an April 1, 2025, New York Knicks vs. Philadelphia 76ers NBA game at Madison Square Garden. SUF No. 15. Ticketmaster's records confirm that the per-ticket price initially displayed to Ms. Cooper ($738.05) already included all applicable fees, and the total price she paid for each ticket was exactly $738.05. SUF Nos. 42–43. Her transaction had no order processing fees and was not subject to government taxes. SUF Nos. 40, 44.

Mr. Altier alleges harm from two ticket purchases in July 2023: (1) a ticket to a Phish concert at Madison Square Garden from July 28–30, 2023; and (2) a ticket to a Joe Russo's Almost Dead concert at Pier 17 on July 27, 2023. SUF Nos. 18–21. But Mr. Altier did not purchase either ticket on Ticketmaster's marketplace; he instead acquired both tickets through transfers to his Ticketmaster account. SUF Nos. 54–55, 57–58.

## C.    Plaintiffs' Claim Against Ticketmaster

Plaintiffs' single cause of action alleges that Ticketmaster violated NYACAL § 25.07(4). *See* FAC ¶¶ 71–83. That statute requires any "platform that facilitates the sale or resale of tickets," such as Ticketmaster, to disclose both the "total cost of the ticket" inclusive of fees "prior to the ticket being selected for purchase," and the portion of the total cost "that represents a service charge, or any other fee or surcharge to the purchaser." NYACAL § 25.07(4). The statute also requires that the "price of the ticket shall not increase during the purchase process." *Id.*

Plaintiffs claim that Ticketmaster violated Section 25.07(4) because the initial ticket selection page separately listed the maximum amount of any per-order fee (the order processing fee) from the per-ticket price including fees. *See* FAC ¶ 77. Plaintiffs allege that by listing these two costs separately, Ticketmaster failed to disclose the total cost of

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

its tickets prior to the tickets being selected for purchase. *See id.* Plaintiffs do not allege that Ticketmaster charged Plaintiffs (or anyone else) a higher order processing fee than the maximum disclosed on the initial seat selection page. And Plaintiffs do not claim that the total price they (or anyone else) paid was ever higher than the sum of the ticket price and the maximum order processing fee disclosed on the initial seat selection page.

Plaintiffs seek to certify a putative class of all residents of the United States, except residents of New York, who purchased tickets to events in New York State between August 29, 2022 and August 11, 2025.[2] *See* FAC ¶¶ 56–58. In the alternative, Plaintiffs seek to certify a putative class of California residents who purchased tickets to events in New York State. *See id.*

## III.   LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is only "'material' if it 'might affect the outcome of the suit.'" *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A "genuine" dispute exists if "a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting same). "A party may move for summary judgment" as to "part of a claim." *Guardian Media Techs., Inc. v. Amazon.com, Inc.*, 2015 WL 12656953, at *2 (C.D. Cal. Apr. 1, 2015).[3]

---

[2] The first day of the putative class period is the day NYACAL § 25.07(4) went in effect.

[3] Ticketmaster is moving for summary judgment on two specific and discrete grounds: Plaintiffs' failure to establish a violation of NYACL 25.07(4) and undisputed evidence showing Plaintiffs did not experience the challenged pricing practice. *See* Fed. R. Civ. P. 56(a) (allowing a party to move for summary judgment as to "part of" a claim). If the Court grants summary judgment on either ground, it would dispose of this litigation. If the Court denies this motion, Defendants may later bring a motion for summary judgment regarding other elements of Plaintiffs' claims and Defendants' defenses. *See, e.g.*, *Sanchez v. Aberdeen Sch. Dist. No. 5*, 2023 WL 2682115, at *1 (W.D. Wash. Mar. 29, 2023) (the federal rules do not prohibit multiple summary judgment motions); *Hoffman v.*

## IV.   **ARGUMENT**

The Court should grant summary judgment to Ticketmaster because the undisputed facts show that Ticketmaster's website fully complies with NYACAL § 25.07(4).  That statute requires that the "total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" be "displayed in the ticket listing prior to the ticket being selected for purchase," and that "[t]he price of the ticket shall not increase during the purchase process."  NYACAL § 25.07(4).

Ticketmaster did that here, both with respect to Plaintiffs' purchases and those of other putative class members.  Ticketmaster disclosed the total cost of tickets, including all applicable fees, prior to the point that putative class members selected tickets for purchase by: (1) incorporating all per-ticket fees directly into the ticket price displayed; and (2) contemporaneously disclosing the maximum amount any order processing fee could be.  The price of any ticket did not increase during the purchasing process, and the total cost of any transaction never exceeded the per-ticket price plus any per-order fee already disclosed on the first landing page of the transaction.  Plaintiffs—as well as every putative class member Plaintiffs purport to represent—therefore received exactly the pricing disclosures that NYACAL § 25.07(4) entitles them to receive.

Additionally, neither Plaintiff can establish that he or she experienced the conduct at issue.  Ms. Cooper's ticket did not have an order processing fee, so the total price she paid was the exact amount initially displayed before she selected her seats for purchase.  Mr. Altier did not purchase his tickets through Ticketmaster at all.  The Court should grant summary judgment on this basis as well.

_Tonnemacher_, 593 F.3d 908, 911 (9th Cir. 2010) (stating that Rule "56 does not limit the number of motions that may be filed").

9

### A.    Ticketmaster Complied With NYACAL § 25.07(4).

#### 1.    Ticketmaster disclosed all fees prior to ticket selection.

Plaintiffs concede that before they selected any ticket for purchase, Ticketmaster displayed: (a) a per-ticket price inclusive of any fees that were specific to each ticket; and (b) if an order processing fee could apply, the maximum amount of the order processing fee for that transaction.

When shown exemplars of the purchase flow during the class period, Mr. Altier confirmed that Ticketmaster incorporated all per-ticket fees into the ticket price on the first page.  SUF No. 35.  Mr. Altier acknowledged that Ticketmaster's seat selection screen during the class period stated that the ticket price "includes fees (before taxes if applicable)" and that "[a]n order processing fee of up to [$]3.95"—or whatever the maximum amount of the order processing fee was—"may be added to each order."  SUF No. 29.  He agreed that "had [he] seen this language, it would inform [him] that there would be an order processing fee of up to [$]3.95 added to the total cost of [his] purchase."  SUF No. 31.  When shown an exemplar of the second page of Ticketmaster's purchase flow, which summed ticket prices with an order processing fee, Altier agreed that it "makes sense" that the difference was attributable to the already disclosed order processing fee.  SUF No. 35.  Altier further confirmed that a customer who had been aware of this disclosure would not have been deceived and that he had no reason to believe that it was deceptive for Ticketmaster to charge an order processing fee after it had disclosed the fee.  SUF Nos. 32–33.

Ms. Cooper likewise confirmed that Ticketmaster incorporated all per-ticket fees into the ticket price on the first page of the exemplar purchase flow.  SUF Nos. 36, 38.  Ms. Cooper also confirmed that the seat selection screen in the purchase flow in effect during the class period displayed language about the potential addition of an order processing fee, though she did not recall reading it during her purchase of Knicks-Sixers tickets.  SUF Nos.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

36–37.[4]  When testifying about the second page of Ticketmaster's purchase flow, Ms. Cooper further agreed that the subtotal included the order processing fee that was already disclosed.  SUF No. 38.

Plaintiffs do not contend (nor could they) that they were ever charged a greater order processing fee than the amount shown on the initial ticket selection page.  SUF No. 67.  By displaying the order processing fee this way, Ticketmaster gave customers all the information they needed to determine the maximum total ticket cost, inclusive of all applicable fees and charges.

The representative transaction discussed in Section II.A, *supra*, is illustrative.  That consumer saw a ticket price inclusive of per-ticket fees (there, $161.00) along with a disclosure that "An order processing fee of up to $3.95 may be added to each order."  On the second screen, the consumer was shown the subtotal for their transaction, which was simply the mathematical sum of the per-ticket price ($161.00) and the order processing fee already disclosed ($3.95).  The only change from the first page to the second is that once the consumer selected tickets, Ticketmaster then knew whether an order processing fee applied and what amount it would be.  With that information, Ticketmaster could show the subtotal of the transaction.  That subtotal included an order processing fee if and only if an order processing fee applied to the purchase of that particular ticket or tickets.

The same is true of all of Plaintiffs' examples in the FAC.  *See* FAC ¶¶ 42–43 ($150.32 subtotal is the sum of $146.37 ticket price initially listed and already disclosed $3.95 order processing fee); *id.* ¶¶ 46–47 ($89.55 subtotal is the sum of $83.55 ticket price initially listed and already disclosed $6.00 order processing fee).  During the class period, Ticketmaster never charged a fee that was not disclosed on the initial ticket selection page.

---

[4] As discussed below, Ms. Cooper did not pay an order processing fee.  Even if she had paid one, her failure to notice and read the disclosure that an "order processing fee of up to $3.95 may be added to each order" does not mean that Ticketmaster failed to disclose that information.  *Cf. Baxter v. Intelius, Inc.*, 2010 WL 3791487, at *4 (C.D. Cal. Sep. 16, 2010) ("A customer who accepts [an offer on a website] is bound by the terms of a disclosure even if he or she chooses not to read it.").

**2.      Ticketmaster's purchase flow complied with NYACAL § 25.07(4).**

From the very first screen of the purchase flow, Plaintiffs saw the "total cost of the ticket, inclusive of all ancillary fees that must be paid to purchase the ticket," and the "price of [Plaintiffs'] ticket[s] [did] not increase during the purchase process." NYACAL § 25.07(4).

*Frias v. City Winery New York, LLC*, 2024 WL 4495177 (N.Y. Sup. Ct. Oct. 11, 2024), is instructive. There, the plaintiff alleged that the defendant did not properly disclose the total cost of event tickets, including fees, in violation of NYACAL § 25.07(4). *Id.* at *1. The plaintiff alleged that hovering over a seat in a seating chart caused one price to display, but that a higher price (inclusive of disclosed fees) would display in a pop-up window once the consumer clicked on the seat. *See id.* The court dismissed the plaintiff's NYACAL § 25.07(4) claim, finding that the defendant had complied with the statute's requirement to disclose the ticket's total cost, including fees, prior to the plaintiff selecting the ticket for purchase. *Id.* at *5. After carefully examining NYACAL § 25.07(4)'s statutory text and legislative history, the court reasoned that it is only "after a customer clicks on a seat from an interactive seating chart . . . that a customer can 'Select' the [ticket] to buy it and proceed with the purchase process." *Id.* at *3–4. Therefore, the failure to disclose the fees when a user hovered their cursor over a seat was not a violation of the statute. *Id.*

This case is even easier than *Frias*. While the defendant's seating chart in *Frias* did not display any fees, Ticketmaster's seating charts *always* displayed the price of the ticket, including all per-ticket fees, and they always included a disclosure of any potential order processing fee for the transaction, all *before* a consumer ever clicked on or interacted with any element of the page. If the defendant's disclosure in *Frias* was compliant with NYACAL § 25.07(4), Ticketmaster's even earlier disclosure certainly was. Thus, Plaintiffs did, "in fact, receive 'all-in pricing' at the 'earliest stage of [the] transaction.'" *Frias*, 2024 WL 4495177, at *5.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

The two cases Plaintiffs cite in the FAC do not change this outcome.  *See* FAC ¶ 55.  In the first, *Vassell v. SeatGeek, Inc.*, 2025 WL 240912, at *11–15 (E.D.N.Y. Jan. 17, 2025), a court declined to dismiss a claim for a violation of NYACAL § 25.07(4) at the pleading stage, found that the plaintiff had adequately alleged Article III standing, and held that it would not make factual determinations necessary to resolve the defendant's voluntary payment doctrine defense.  But in *Vassell*, the ticket prices SeatGeek showed on the initial seating chart page did not include *any* fees.  *Id.* at *1–2.  It was only after consumers first selected a seat for purchase and proceeded to a second page that SeatGeek first disclosed per-ticket fees.  *Id.*

In the second, *Berryman v. Reading International, Inc.*, 763 F. Supp. 3d 596, 600 (S.D.N.Y. 2025), the court declined to dismiss a NYACAL § 25.07(4) claim at the pleadings stage where the defendant's website did not disclose fees for movie theater viewings until the *third* page of the purchase flow.  There, the defendant did not disclose any ticket prices or fees on the first page of the purchase flow, where consumers selected the movie and showtime they wished to attend.  *See id.*  The defendant disclosed only the ticket face value (without fees) on the second page of the purchase flow, where consumers selected the number of tickets they wanted.  *See id.*  Only on the third page of the purchase flow, where consumers selected the specific seats they wished to purchase, did the defendant disclose fees.  *See id.*  Like *Vassell*, the purchase flow in *Reading* is completely different from Ticketmaster's purchase flow, which *never* displayed a ticket price without fees.

Under NYACAL § 25.07(4)'s plain terms and as construed by New York courts, Ticketmaster "disclose[d] the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, . . . prior to the ticket being selected for purchase," and ensured that the "price of the ticket [did] not increase during the purchase process."

### 3. Plaintiffs' contrary construction fails.

Plaintiffs say Ticketmaster's disclosures were inadequate.  In Plaintiffs' view, Ticketmaster's choice to disclose the order processing fee separately from ticket prices

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

violated the statute, even though Ticketmaster disclosed the order processing fee at the same time as per-ticket fees, all before a consumer selected tickets. In other words, Plaintiffs read New York's all-in statute to forbid marketplaces from disclosing *any* fees separately from the ticket price on the ticket selection page.

But the statute does not say that. The statute does not forbid particular types of fees, such as a fee that applies per transaction rather than per ticket. Nor does it demand all fees be incorporated directly into the ticket price. To the contrary, the only language in the statute concerning how fees must be displayed expressly contemplates that fees *may* be separately disclosed from the ticket face value. NYACAL § 25.07(4) provides that every ticketing marketplace must "disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee," and it further notes that "[d]isclosures of subtotals, fees, charges, and any other component of the total price shall not be false or misleading, and may not be presented more prominently or in the same or larger size as the total price." Ticketmaster's purchase flow is fully consistent with these provisions, since Ticketmaster provided clear and conspicuous disclosures of each fee on multiple pages of the purchase flow, and since the second page of Ticketmaster's purchase flow displayed a subtotal that accurately summed the already-disclosed per-ticket price with the already-disclosed order processing fee. SUF Nos. 9–11, 25–27.[5] The New York legislature could have easily prohibited disclosure of fees separately from the ticket price, but it chose not to. It required only that any fees "that must be paid in order to purchase the ticket" be "disclose[d]." NYACAL § 25.07(4).

---

[5] Contrary to Plaintiffs' suggestion, adding the per-ticket price (including per-ticket fees) with the order processing fee together for the consumer in the subtotal did not constitute an "increase" in the "price of the ticket" in violation of NYACAL § 25.07(4). *See* FAC ¶¶ 43, 47, 51, 54, 82. The price of the *ticket* did not change from the first page to the second page; the subtotal on the second page reflected the total cost for the *transaction*, which included both the price of the ticket(s) and any applicable order processing fee (but nothing else).

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

In the FAC, Plaintiffs also contend that Ticketmaster's use of the word "may" in its disclosure of the order processing fee— "an order processing fee . . . may be added to each order"— rendered the disclosure inadequate because the order processing fee was *always* added to every order.  FAC ¶ 54.  That is indisputably wrong.  The word "may" in Ticketmaster's order processing fee disclosure was not equivocal or evasive; it was the only accurate way to describe the fee.  An order processing fee did not universally apply to every purchase of every ticket, even across the same event.  SUF Nos. 70–73.  Whether an order processing fee applied at all and the amount of the order processing fee depended on the ticket inventory, meaning the ticket types available for purchase.  *Id.*  For instance, a consumer typically could browse for both primary and resale tickets on the same page, and an order processing fee may have only applied to one of those ticket types (or any order processing fee may have been different values for different ticket types).  *Id.*

Further, because the order processing fee was per-order (not per-ticket), its impact on any single ticket price was determined, in part, on the quantity of tickets any given consumer selected.  SUF No. 73.  For example, if a consumer were selecting tickets for an event that had a $3.00 order processing fee, that fee could be $3.00 per ticket if the consumer selected one ticket, $1.50 per ticket if the consumer selected two tickets, $1.00 per ticket if the consumer selected three tickets, etc.  Before a consumer began interacting with the ticket selection page, Ticketmaster could not know which tickets that consumer would select or how many tickets they would select, and so it could not display the order processing fee as a per-ticket amount from the outset.  SUF Nos. 73–76.  In any event, the total cost needed to purchase a ticket was never greater than the sum of everything that Ticketmaster disclosed on the very first page: namely, the price of the ticket inclusive of per-ticket fees and the maximum order processing fee.  If a consumer was charged the maximum order processing fee, that consumer was neither deceived nor injured because Ticketmaster disclosed the order processing fee to them before they selected a ticket.  If a consumer was charged an order processing fee lower than the maximum, that consumer was neither deceived nor injured because they paid less than they expected to.  And if a

15

consumer was not charged an order processing fee at all, that consumer was neither deceived nor injured because they did not pay an undisclosed fee. In all three cases, the consumer has no viable claim.

* * *

Ticketmaster did everything the law required of it by disclosing all fees on the ticket selection page prior to a consumer selecting a ticket for purchase. At bottom, Plaintiffs' entire case boils down to accusing Ticketmaster of failing to add two numbers together for the ticket purchaser. Courts have held in other contexts that a "plaintiff having to perform 'simple math' with the information already in his possession . . . is no[t] cognizable injury." *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012). NYACAL § 25.07(4) does not permit Plaintiffs to maintain an action for being asked to perform elementary school addition.

### B. Ticketmaster Is Also Entitled to Summary Judgment Because Neither Plaintiff Experienced the Challenged Pricing Practice.

Defendants are also entitled to summary judgment because the undisputed facts demonstrate that Plaintiffs were not injured because they were not even exposed to the pricing practice they challenge. Ticketmaster did not charge Ms. Cooper an order processing fee, and Mr. Altier purchased the two tickets at issue in the FAC from a third party, not Ticketmaster.

It is axiomatic that a "consumer who was not exposed to the allegedly wrongful business practices at issue" cannot have been harmed. *English v. Apple Inc.*, 2016 WL 1188200, at *8 n.12 (N.D. Cal. Jan. 5, 2016); *see also, e.g.*, *Downey v. Public Storage, Inc.*, 44 Cal. App. 5th 1103, 1115 (2020) ("Unless the class members were *exposed* to the advertisement, they could not have been deceived by it.") (emphasis in original); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1089 (C.D. Cal. 2015) (similar). Because neither Ms. Cooper nor Mr. Altier paid an order processing fee to

Ticketmaster in connection with their alleged ticket purchases, they cannot state a claim under NYACAL § 25.07(4) as a matter of law.

**Ms. Cooper.**   Ms. Cooper alleges harm from a single transaction: a January 7, 2025 purchase of two tickets to an April 1, 2025 New York Knicks vs. Philadelphia 76ers NBA game at Madison Square Garden.  FAC ¶ 15; SUF No. 15.  Indeed, that is the only purchase she made for a live event at a venue in New York between August 29, 2022 and August 11, 2025.  *Id.*  Ms. Cooper paid a total of $1,476.10 for the two tickets.  SUF No. 41.  Ticketmaster's records confirm that the per-ticket price initially displayed to Ms. Cooper ($738.05) already included all applicable fees, and the total price she paid for each ticket was exactly $738.05.  SUF Nos. 42–43.  Her transaction had no order processing fee and was not subject to government taxes.  SUF Nos. 40, 44.  Because Ms. Cooper did not pay an order processing fee, she was "not exposed" to the pricing practice she alleges caused her harm, and cannot assert a claim under NYACAL § 25.07(4) on her own behalf or on behalf of the putative class.  *English*, 2016 WL 1188200, at *8 n.12.

**Mr. Altier.**   The flaw in Mr. Altier's standing is even more fundamental.  Mr. Altier alleges harm from two ticket purchases in July 2023: (1) a ticket to a Phish concert at Madison Square Garden from July 28–30, 2023; and (2) a ticket to a Joe Russo's Almost Dead concert at Pier 17 on July 27, 2023.  FAC ¶ 12; SUF Nos. 18–21.  But discovery confirmed that Mr. Altier did not purchase either of those tickets on Ticketmaster.

Rather, Ticketmaster's records confirm that both tickets were transferred to Mr. Altier's account and that Mr. Altier did not purchase them through Ticketmaster.  SUF Nos. 54–55, 57–58.  And Mr. Altier does not dispute those records.  For the Phish concert, Mr. Altier conceded that it is possible that the ticket he purchased was "listed or sold on a site other than Ticketmaster" and that he received the ticket as a ticket transfer.  SUF No. 48.  For the Joe Russo's Almost Dead concert, Mr. Altier produced a receipt showing that the ticket was transferred to him just hours before the concert, and conceded it was "[p]ossible" that he purchased it on a secondary ticketing site.  SUF Nos. 57, 60.  Mr. Altier could not recall whether he paid anything for the ticket or whether he purchased it on

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

Ticketmaster. SUF No. 59. When asked whether he has any email or other documentation confirming his purchase of the ticket, Mr. Altier testified: "I don't know the answer to that." SUF No. 61.

Indeed, Mr. Altier could not recall anything about how he obtained these tickets: He said he recalled "[v]irtually nothing" about the purchase process for the Phish concert and "[n]othing really" about the purchase process for the Almost Dead concert. SUF Nos. 50, 62. He could not recall how much he paid for either ticket, SUF Nos. 51, 63, and, expressly testified that for the Phish concert, he could not remember what fees were included or when any fees were disclosed, SUF Nos. 52–53.

Because Mr. Altier did not purchase his tickets on Ticketmaster at all, he was "not exposed" to the pricing practice he alleges caused him harm, and he cannot assert a claim under NYACAL § 25.07(4) on his own behalf or on behalf of the putative class. *English*, 2016 WL 1188200, at *8 n.12.

## V.    CONCLUSION

There is no genuine dispute of material fact regarding whether Ticketmaster fully complied with NYACAL § 25.07(4). All parties agree that Ticketmaster disclosed all fees on the initial ticket selection page. Plaintiffs' sole complaint—that the per-ticket price was listed separately on the first page from the order processing fee—does not violate the statute. Moreover, Plaintiffs did not suffer any injury. One Plaintiff did not pay an order processing fee, and the other did not even buy his tickets on Ticketmaster.

The Court should grant Defendants' motion for summary judgment.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

Dated:  April 15, 2026

JENNER & BLOCK LLP

By: */s/ Brandon D. Fox*

Brandon D. Fox
Alison I. Stein
Alexander M. Smith
Cayman C. Mitchell
Kristen L. Green
Eric Wolff

Attorneys for Defendants
Live Nation Entertainment, Inc. and
Ticketmaster, L.L.C.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-cv-10757-GW (KS)

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendants Live Nation Entertainment, Inc. and Ticketmaster, L.L.C. hereby certifies that the foregoing brief contains 5,434 words, excluding the caption, the table of contents, the table of authorities, the signature block, and this certification, which complies with the word limit of Local Rule 11-6.1.


Dated:  April 15, 2026                              JENNER & BLOCK LLP

                                    By: */s/ Brandon D. Fox*
                                        Brandon D. Fox
                                        Alison I. Stein
                                        Alexander M. Smith
                                        Cayman C. Mitchell
                                        Kristen L. Green
                                        Eric Wolff

                                        Attorneys for Defendants
                                        Live Nation Entertainment, Inc. and
                                        Ticketmaster, L.L.C.