**ZIMMERMAN REED LLP**
Caleb Marker (SBN 269721)
caleb.marker@zimmreed.com
Jessica Liu (SBN 358713)
jessica.liu@zimmreed.com
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

**ZIMMERMAN REED LLP**
Hart L. Robinovitch (*pro hac vice*)
hart.robinovitch@zimmreed.com
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ 85254
(480) 348-6400 Telephone
(480) 348-6415 Facsimile

**ZIMMERMAN REED LLP**
Finnuala K. Tessier (*pro hac vice*)
finnuala.tessier@zimmreed.com
25568 Genesee Trail Rd
Golden, CO 80401
Telephone: (877) 500-8780
Facsimile: (877) 500-8781

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHAWN ABBOTT; MARSHALL ALTIER; KALEN COOPER; HAYLEY KRESOCK; DENNIS MITCHELTREE; and EUGENE JO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TICKETMASTER, LLC; and LIVE NATION ENTERTAINMENT, INC.

Defendants.

Case No. 2:25-cv-10757-GW (KSx)

**SECOND AMENDED CLASS ACTION COMPLAINT**

[CLASS ACTION]

1. Violation of New York Arts and Cultural Affairs Law § 25.07(4).

(Demand for Jury Trial)

Plaintiffs Marshall Altier, Kalen Cooper, Hayley Kresock, and Dennis Mitcheltree (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class Members"), by and through their undersigned counsel, bring this class action complaint against Defendants Live Nation Entertainment, Inc. ("Live Nation") and its subsidiary company Ticketmaster, LLC ("Ticketmaster") (collectively "Defendants").[1] Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge. This Second Amended Complaint is filed pursuant to leave granted by the Court by orders dated on or about June 12, 15 and 24, 2026. (Orders granting Plaintiffs' Motion for Leave to Amend to add additional representative plaintiffs, denying Defendants' Motion for Summary Judgment and modifying case schedule) (ECF 73, 74, 83). All disputes and claims set forth herein were previously pending.

## INTRODUCTION

1. This case challenges Defendants' common conduct of improperly charging consumers on their websites in violation of applicable provisions of the New York Arts and Cultural Affairs Law, by not displaying the total ticket cost and the portion of the ticket price stated in dollars that represents fees on the initial ticket listing and selection page. Rather, the higher total ticket costs, including all ancillary fees, and the fee breakdown are only disclosed on subsequent pages on Defendants' websites that are accessible only after the consumer selects a specific available ticket for purchase. Such conduct violates New York Arts and Cultural Affairs Law, §25.07(4) and/or other laws.

2. When ticket purchasers visit Defendants' website https://ticketmaster.com or www.livenation.com either through the webpages or through Defendants' mobile application (collectively the "Website" or "Websites") to buy an admission ticket to an event in New York state, they are initially quoted one price, only to later be shown the true total ticket price, which is higher and includes ancillary "fees", including but not limited

[1] Shawn Abbott and Eugene Jo previously requested that their claims be dismissed without prejudice. (ECF 25).

to an order processing fee. Other ancillary fees charged to Class members by Defendants at relevant times during the Class Period include, but are not limited to, service fees, delivery fees, order processing fees, and/or facility fees (collectively "fees" or "ancillary fees").

3. These added fees and their specific amounts are only presented after consumers select their ticket option and pass through subsequent screens in the purchase process. In addition, the portion of the ticket price stated in dollars that represents fees is only disclosed after a ticket is selected for purchase.

4. In an effort to stop this type of business practice, New York State passed the Arts and Cultural Affairs Law, which provides that a "platform that facilitates the sale or resale of the tickets… shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser." § 25.07(4). Specifically, the statute requires that the "disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase." Id. (emphasis added). § 25.07(4). Section 25.07(4) further states that "[t]he price of the ticket shall not increase during the purchase process." Id. (emphasis added). This latest version of the law went into effect August 29, 2022.[2]

5. Plaintiffs were subjected to the above-described practices and injured by Defendants' conduct, in violation of § 25.07(4), when they purchased tickets to an event in New York state from Defendants. This occurred when Plaintiffs: (a) viewed tickets offered for sale on Defendants' website that had one price depicted on the first screen listing available tickets for sale, only to have the charge rise after they selected particular tickets on subsequent screens required to finalize the purchase process, and/or (b) when Defendants failed to disclose, before tickets are selected for purchase, the portion of the total ticket price that was attributable to specific fees (i.e., the fee breakdown).

[2] *See* N.Y. Arts & Cult. Aff. Law § 25.07.

6. As a result of Defendants' failure to adhere to these disclosure standards, Plaintiffs seek relief in this action individually, and on behalf of other ticket purchasers of Defendants' to events in New York state for statutory damages in the amount of fifty dollars per violation[3], reasonable attorneys' costs and fees, injunctive relief under New York Arts and Cultural Affair Law § 25.33, as well as all other relief that may be just and equitable in the circumstances. As the practices described within are continuing and ongoing, injunctive relief (both private injunctive relief and public injunctive relief) is both appropriate and necessary to protect the members of the class and future consumers within the general public from being harmed from the practices complained of in the future and incurring additional injuries. Plaintiffs and members of the class are likely to attempt to engage in ticket transactions in the future and Defendants' improper price disclosures as described herein should be modified and corrected to avoid continuation of the practices now complained of. Even if Defendants have temporarily suspended the deceptive practices complained of, until enjoined by the court the risk that Defendants will revert back to prior practices remains and creates the additional risk of future injury to Plaintiffs and the Class.

## PARTIES

7. Plaintiff Marshall Altier ("Altier") is an individual consumer who, at all times material hereto, was a resident of the State of California. Altier is a resident of San Diego, California.

8. Altier is a frequent purchaser of concert tickets, including those for events venued in New York state. Many ticket purchases that Altier has made are from Defendants, including purchases to events venued in New York state made between August 29, 2022 and August 11, 2025.

9. Among other ticket purchases that he has made, on July 26, 2025, Altier purchased from Ticketmaster a ticket for each of two Phish concerts venued in Saratoga Springs, New York, one that same day, and one the next day, July 27, 2025. For each

[3] *See id*. at § 25.34.

ticket, he paid $67.20, including a face value of $38.50 and fees of $28.70. Per the operative purchase flow that Ticketmaster employed at the time, Defendants did not disclose, before the tickets were selected by Altier for purchase, a fee breakdown showing that $28.70 of the $67.20 ticket price was attributable to per-ticket fees.

10. Plaintiff Kalen Cooper ("Cooper") is an individual consumer who, at all times material hereto, was a resident of the State of California. Cooper is a resident of Pasadena, California.

11. At relevant times, Cooper has purchased concert tickets from Defendants, including those for events venued in New York state. Cooper purchased tickets from Defendants to events venued in New York state between August 29, 2022 and August 11, 2025.

12. On or about January 7, 2025, Cooper purchased tickets to an April 1, 2025 New York Knicks v. Philadelphia 76ers basketball game venued at Madison Square Garden in New York, New York from Ticketmaster. Per the operative purchase flow that Ticketmaster employed at the time, Ticketmaster did not disclose before the tickets were selected by Cooper for purchase, a fee breakdown showing that $106.05 of the $738.05 price was attributable to per-ticket fees.

13. Upon information and belief, the transaction flow process that Altier and Cooper viewed on Defendants' Websites was substantially similar to the process depicted in this complaint and which other members of the Class were subjected to between July 17, 2023 and August 11, 2025. In particular, Defendants did not disclose, before consumers selected particular tickets for purchase, the portion of the ticket price attributable to ancillary fees.

14. Plaintiff Hayley Kresock ("Kresock") is an individual consumer who, at all times material hereto, was a resident of the State of New York. Kresock is a resident of Ithaca, New York.

15. At relevant times, Kresock has purchased concert tickets from Defendants, including those for events venued in New York state. Kresock purchased tickets from

Defendants to events venued in New York state between August 29, 2022 and May 12, 2025.

16. Among other ticket purchases that she has made, on or about March 29, 2024, Kresock paid Ticketmaster $87.30 for one ticket to an April 14, 2024 showing of the play Hadestown in Syracuse, New York, including payment of an order processing fee of $3.60 and additional fees of $11.70 ($8.70 service fee and $3.00 facility fee). Per the operative purchase flow employed at the time, Defendants disclosed, on the initial ticket selection page, a total ticket cost of $83.70. Defendants did not disclose the fee breakdown (that is, that $11.70 of the $83.70 displayed cost was attributable to per-ticket fees) and did not disclose a total cost of $87.30 including order processing fees.

17. The initial price shown to Kresock on the first screen listing available tickets ($83.70) was less than the final ticket price charged by Ticketmaster ($87.30) because the amount of the order processing fee ultimately charged and collected ($3.60) was not included in the ticket price shown on the initial screen before Kresock selected particular tickets.

18. Additionally, on or about March 21, 2025, Kresock paid Ticketmaster $128.20 for two tickets to a Black Keys concert in Canandaigua, New York, including payment of an order processing fee of $3 and additional fees of $44.20 ($26.20 service fee and $18 facility fee). Per the operative purchase flow at the time, Defendants disclosed, on the initial ticket selection page, a total cost of $62.60 per ticket ($125.20 for two tickets). Defendants did not disclose the fee breakdown (that is, that $22.10 of the $62.60 cost for each ticket, or $44.20 of the $125.20 displayed cost for two tickets, was attributable to per-ticket fees), and did not disclose a total cost of $64.10 per ticket ($128.20 for two tickets) including order processing fees.

19. Plaintiff Dennis Mitcheltree ("Mitcheltree") is an individual consumer who, at all times material hereto, was a resident of the State of California. Mitcheltree is a resident of Santa Monica, California.

20. At relevant times, Mitcheltree has purchased concert tickets from Defendants, including those for events venued in New York state. Mitcheltree purchased tickets from Defendants to events venued in New York state between August 29, 2022 and May 12, 2025.

21. On or about September 6, 2023, Mitcheltree paid Ticketmaster $204.06 for two tickets to a September 24, 2024 New York Yankees v. Arizona Diamondbacks game in New York, New York, including order processing fees of $3.30 and additional fees of $13.50. Per the operative purchase flow at the time, Defendants disclosed, on the initial ticket selection page, a total cost of $100.38 per ticket ($200.76 for two tickets). Defendants did not disclose the fee breakdown (that is, that $6.75 of the $100.38 cost for each ticket, or $13.50 of the $200.76 displayed cost for two tickets, was attributable to fees), and did not disclose a total cost of $102.03 per ticket ($204.06 for two tickets) including order processing fees.

22. The initial price shown to Mitcheltree on the first screen listing available tickets ($200.76) was less than the final ticket price charged by Ticketmaster ($204.06) as the amount of the order processing fee ultimately collected ($3.30) was not included in the ticket price shown on the initial ticket selection screen.

23. Upon information and belief, the transaction flow process that Kresock and Mitcheltree viewed on Defendants' Websites for events venued in New York state was substantially similar to the process depicted in this complaint and to which other members of the Class were subjected. That is, Defendants displayed one price on the initial ticket selection page, but added order processing fees and/or other fees to that price after particular tickets were selected for purchase, increasing the total price so that it was higher than the originally displayed price. In addition, Defendants did not disclose, before Kresock and Mitcheltree selected tickets for purchase, the portion of the ticket price attributable to fees (the fee breakdown).

24. Plaintiffs' and all class members claims accrued between August 29, 2022 and August 11, 2025. No claims are presented in this complaint on behalf of any Plaintiff

or class member which accrued before August 29, 2022 or after August 11, 2025. Plaintiffs and class members have been injured and suffered loss from the practices complained of and are at risk of further injury in the future unless enjoined. Plaintiffs and class members should have been charged the initially displayed "all in" ticket prices, not higher prices with additional fees that were only disclosed at subsequent stages of the online purchase process on Defendants' websites. In addition, Plaintiffs and class members should not have been charged fees that were not disclosed as part of a fee breakdown on the initial ticket listing page. Plaintiffs and class members seek applicable statutory damages under the statutes described herein for each violation they were subjected to, along with other available relief.

25. Live Nation Entertainment, Inc. (formerly known as Live Nation, Inc.) is a Delaware corporation with its principal place of business at 9348 Civic Center Drive, Beverly Hills, California 90210 and/or other locations in California. Live Nation is the largest live entertainment company in the world, connecting over half a billion fans across all of its platforms in 49 countries.[4] In 2023, Live Nation distributed over 620 million tickets through its systems, making it the world's leading live entertainment ticket sales and marketing company. Id. Live Nation's 2023 revenues were approximately $22.75 billion, a 36% increase compared to the previous year. Its "Ticketing" segment generated nearly $2.96 billion in revenue, which includes ticketing service charges for tickets sold to both Live Nation's own events and those of third-party clients. Id.

26. Defendant Ticketmaster LLC is a wholly-owned subsidiary of Live Nation Entertainment, Inc. Ticketmaster is a limited liability company organized and existing under the laws of Virginia with its principal place of business at 7060 Hollywood Boulevard, Hollywood, California, 90028 and/or other locations in California. Ticketmaster LLC is the successor in interest to Ticketmaster Entertainment, Inc., a Delaware corporation, and is the largest ticketing company in the United States, with 2019

[4] Live Nation Entertainment, Inc., Form 10-K, February 22, 2024, available at SEC Edgar Database.

revenues of approximately $1.54 billion. Ticketmaster's business includes two main arms: its legacy primary ticketing services business and a newer, but increasingly-dominant, secondary ticketing service business. In performing the acts herein alleged, Ticketmaster acted under the direction and control of, and in coordination with, Defendant Live Nation Entertainment, and its senior-most executives.

27. Live Nation Entertainment and Ticketmaster merged in an all-stock transaction in 2010.

28. At all relevant times, Defendants marketed and sold tickets to sporting, music, entertainment and/or other events venued in New York state to consumers nationwide, including Plaintiffs and members of the Class.

## JURISDICTION AND VENUE

29. After this case was initially filed in state court on or about March 7, 2025 and thereafter amended on November 5, 2025, Defendants removed the action to this court. See Notice of Removal, filed November 7, 2025 (ECF 1).

30. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(d)(2)(A) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are 100 or more members in the proposed class, and at least one member of the putative class is a citizen of a state different from Defendant.

31. This Court has general personal jurisdiction over Defendants because they are headquartered in Los Angeles, California and within this District. This Court also has specific personal jurisdiction over this action because the acts and omissions giving rise to Plaintiffs' and class members' claims occurred in and emanated from Defendants' conduct in this District.

32. Venue is proper under 28 U.S.C. §§ 1391(b)(1) – (2) because Defendants are headquartered in this District and because a substantial amount of the events giving rise to this action occurred in this District.

33. Plaintiffs and Class members were overcharged, paid unlawful and unwarranted fees, suffered harm, injury, and incurred monetary loss as a result of Defendants' drip-pricing practices and other conduct as described herein.

34. Plaintiffs and the members of the Class suffered economic injuries that flowed from Defendants' violation of the NYACAL. Each were injured each time they purchased a ticket to an event in New York state on the Websites and they were charged and paid a fee that was rendered unlawful by Defendants' failure to disclose the total price and fee breakdown to them at the beginning of the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4).

35. When purchasing tickets to any event venued in New York state from Defendants' Websites and platforms that facilitate the sale or resale of the tickets, Defendants were obligated by law to disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, as well as the portion of that price attributable to fees in the ticket listing prior to the ticket being selected for purchase and the price of the ticket(s) should not have increased during the purchase process. By failing to do this, Defendants violated §25.07(4), injuring and damaging Plaintiffs and each Class Member on each ticket sold, giving them a right to all relief claimed. Plaintiffs and each Class Member should not have been charged more than the initially advertised price displayed by Defendants, nor should they have been charged fees that were not disclosed as part of a fee breakdown on the initial listing page. Plaintiffs would have preferred to pay the lower price initially shown on each ticket listing at the point immediately prior to the ticket(s) being selected for purchase and should not have been charged more by Defendants. Plaintiffs would also have preferred not to pay undisclosed fees.

36. Defendants' decision to employ the above-described pricing practices was intentionally done in order to charge and receive more revenues from ancillary fees when selling event tickets to the Class than would have been the case had Defendants not engaged in those practices. For instance, in a recent action filed by the Federal Trade

Commission against Defendants, the F.T.C. alleged that materials that it reviewed during its investigation of Defendants' sales practices demonstrate that Defendants intentionally designed their price display because of internal testing showing that Defendants' revenues increased when their price display for ancillary fees was less transparent. See, F.T.C. v Live Nation Entertainment, Inc. and Ticketmaster, L.L.C., 2:25-cv-08884 (C. D. Cal., filed September 18, 2025) (Complaint at ¶¶53-62, ECF 1).

37. The claims asserted by Plaintiffs are not subject to mandatory arbitration as set forth in Defendants' Terms of Use because the Ninth Circuit Court of Appeals found that those procedures were unconscionable, unenforceable and that California's Discover Bank rule. Heckman v. Live Nation Ent., Inc., 120 F.4th 670, 690 (9th Cir. 2024). The court in Heckman concluded that the Federal Arbitration Act ("FAA") did not apply to Ticketmaster's Terms of Use and California's Discover Bank rule—which prohibits class-action waivers in consumer contracts of adhesion—governed and dictated that the arbitration agreement was also unenforceable for that reason. In short, because the company's terms of service contained a "mass arbitration protocol"—batching of claims and bellwether proceedings—the FAA did not protect the arbitration agreement from challenge under Discover Bank and class proceedings were therefore permitted. Plaintiffs' claims accrued during the period those same Terms of Use were in force. If Plaintiffs here were required to file individual claims in arbitration forum, they would be subjected to the same provisions found to be unconscionable and unenforceable by the Ninth Circuit in Heckman. As a result, they properly file their class claims in this court. No claims are presented on behalf of Plaintiffs and the Class that are based on ticket transactions which occurred after August 11, 2025.

**<u>NEW YORK ARTS & CULTURAL AFFAIRS LAW</u>**

38. New York enacted Arts & Cultural Affairs Law § 25.07(4), effective on August 29, 2022, which provides that "[e]very operator or operator's agent of a place of entertainment, any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets … shall disclose the total cost of the ticket, inclusive of all ancillary fees

that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser. Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase." § 25.07(4). "[T]he price of the ticket shall not increase during the purchase process." Id.

39. In response to ticketing websites' communications to the State of New York's Division of Licensing Services as to the scope of the law, the Division of Licensing Services clarified: "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices."[5] (emphasis added). The Division of Licensing Services explained that "the ticket listing must include the total cost of the ticket, with a breakdown of all service charges, fees and surcharges, that the purchaser must pay just to purchase the ticket, by itself (not including delivery or other optional charges)." Id.

40. The Division of Licensing Services added that "[f]rom the moment the prospective purchaser assesses the [] ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself." Id. "When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser should not then have to search for the total price of the ticket as the purchaser proceeds through the purchasing process, it should continue to be readily available to the purchaser." Id. at 2.

41. The statute does not speak to any purchasing limitations. By all accounts, the statute applies to New York and non-New-York residents who purchase tickets to an event venued in New York state. This is confirmed in New York Arts & Cultural Affairs Law § 25.01 which addresses the broad scope of the statute to include: (i) ticket sales by non-New York based sellers and (ii) ticket sales by non-New York purchasers to events in New York state, as follows:

> The legislature further finds that many ticket resellers advertise and sell tickets to places of entertainment within the boundaries of New York state often from locations outside the state, without adhering to the provisions of this article. The legislature objects to any claim that businesses domiciled outside New

[5] *See* N.Y. Dep't of State, Div. Licens. Servs., Request for Additional Guidance – New York State Senate Bill S.9461, (Oct 24, 2022).

> York state are exempted from this statute when selling tickets to events occurring in New York state, regardless of the territories of origin of both the buyer and seller. It is the legislature's intent that all governmental bodies charged with enforcement of this article, including the attorney general of New York state have the authority to regulate the activities of all persons reselling tickets to venues located within this state to the full extent of the state's powers under the federal and state constitutions and that this article be construed in light of this purpose.

(emphasis added).

42. New York Arts & Cultural Affairs Law § 25.33 provides that affected consumers are entitled to at least $50 in statutory damages, injunctive relief, plus attorney's fees and costs for each violation of § 25.04.

> Notwithstanding any right of action granted to any governmental body pursuant to this chapter, any person who has been injured by reason of a violation of this article may bring an action in his or her own name to enjoin such unlawful act, an action to recover his or her actual damages or fifty dollars, whichever is greater, or both such actions. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Arts & Cult. Aff. Law § 25.33.

43. All Class members, including Plaintiffs are "person[s] who ha[ve] been injured by reason of a violation of this article" and entitled to "bring an action in his or her own name to enjoin such unlawful act, an action to recover his or her actual damages or fifty dollars, whichever is greater, or both such actions."

## FACTUAL ALLEGATIONS

44. Defendants are in the business of ticket sales and distribution, selling tickets for concerts, sporting events, and other events on their Websites (including the Ticketmaster mobile application) to consumers nationwide. Defendants sell tickets to consumers nationwide for events venued in New York state.

45. From August 29, 2022 until at least May 12, 2025, Defendants failed to disclose the total cost of the ticket on the Website prior to the user selecting the ticket for purchase. During this period, Defendants initially displayed a lower price, only disclosing the applicable fees and total selling price on subsequent screens during the checkout process.

46. The process described below is common for ticket purchase transactions to events venued in New York state between August 29, 2022 and at least May 12, 2025. During this period, when a consumer went to the Website and selected an event for which they want to consider purchasing tickets in New York state, they were presented with the following screen announcing that Ticketmaster now uses "All-in Pricing."




47. Defendants explained All-in Pricing as follows: "that means that you'll see cost of the ticket up front including fees (before taxes)." That statement was inaccurate.

48. When the consumer hit the "continue" button, they were brought to the event's ticket listing page, where they could input the number of tickets they want and see a listing of the available tickets, seat location, and corresponding prices for the tickets. Also displayed was fine print notation indicating that "an order processing fee of up to $3.95 may be added to each order." However, this possible "order processing fee" was not included in the initially displayed price for the ticket. For instance, for the selected event (New York Rangers vs. Tampa Bay Lightning at Madison Square Garden in New York

City on April 17, 2025) the initial screen shown to the consumer showed that the lowest priced ticket available was Section 419, Row 7, and was listed for **$146.37**.




49. If the consumer wanted to move forward with the purchase, they could click on the desired ticket offering for that seat in Section 419, Row 7, which took them to the following screen. Notably, the subtotal was *not* $146.37 as initially listed under the "Lowest Price" column, *nor* as displayed above the subtotal, but instead **$150.32**. This screen did not contain any additional information as to the price increase. Thus, the consumer was only shown the true, higher price of the ticket *after* she selects the ticket on the initial screen.




50. When the consumer proceeded with the transaction by clicking the green "Next" button, they were shown the following page. The total displayed was $150.32, which was broken down into the "Verified Resale Ticket" ($123.00), "Service Fee" ($23.37), and "Order Processing Fee" ($3.95). Thus, the consumer was only shown the actual higher ticket amount including the "Order Processing Fee" on the subsequent checkout page, not the initial screen where the ticket was originally presented for sale. Such conduct violated the Arts & Cultural Affairs Law § 25.07(4).




51. The same type of pricing discrepancy occurred for other events venued in New York sold on Ticketmaster during the August 29, 2022 to May 12, 2025 period, such as the July 23, 2025 Chris Stapelton Concert at the UBS Arena in Belmont Park, New York. As with the New York Rangers game tickets described above, customers who selected the Chris Stapleton event were first shown an alert on “All-in Pricing.”




52. Once a customer clicked the "Accept & Continue" button, the Website indicated that the lowest price of a single available ticket was located in Section 324, Row 5, priced at **$83.55**. The Website also said that "Price includes fees (before taxes if applicable). An order processing fee of up to $6.00 may be added to each order." Notably, the possible order processing fee for this event was greater than the possible $3.95 for the Rangers game.



53. By not including the actual amount of the “order processing fee” in the total ticket price on the first screen; by using the uncertain word “may” to describe the possible addition of the “order processing fee” (when Defendants know with certainty that it will be added); and by using smaller and less prominent font to describe it, Defendants violated Arts & Cultural Affairs Law § 25.07(4). When the customer clicked on the specific ticket offering, they were shown the following screen. The subtotal for the ticket was not $83.55 as previously displayed, or as displayed above the subtotal. Instead, the subtotal was **$89.55**. Once again, this screen contained no information to explain the increase in price.




54. When the customer clicked the “Next” button, they were taken to the final checkout screen. The total price was $91.05, including $63.75 for the ticket price, $19.80 in “Service Fee”, $6.00 in “Order Processing Fee” and $1.50 in tax. Customers were thus unable to view the amount of the “Order Processing Fee” that was added to the total ticket price until the final checkout screen.




55. Another example of pricing discrepancy is seen in the Katy Perry concert on August 11, 2025 at Madison Square Garden, New York. As with the previous events, Customers who clicked on the Katy Perry concert were first shown a notice on "All-in Pricing."




56. Next, customers who clicked the blue box were shown that the "lowest price" single ticket available is in Section 312, Row 1, listed at **$161.00**. The screen also showed

that "Price includes fees (before taxes if applicable). An order processing fee of up to $3.95 may be added to each order."




57. Upon clicking on that ticket offering, customers were shown a subsequent screen which displayed the subtotal as **$164.95**. As with the previously discussed events, there was no explanation given for the price increase on this screen.



58. When the consumer clicked the "Next" button, they were taken to the final checkout screen, where the total price was $164.95, which included $140 in ticket price, $21 in "Service Fee", and $3.95 for an "Order Processing Fee." This final checkout screen was the first time the consumer can see the amount and applicability of the "Order Processing Fee."




59. As shown, Defendants' general practice when selling tickets to events at many New York venues was not to disclose the "total cost" including "all ancillary fees that must be paid in order to purchase the ticket" "prior to the ticket being selected for purchase" as required by New York Arts & Cultural Affairs Law §25.07. Rather, the initially displayed ticket price was lower than the final total cost, which was only disclosed on subsequent screens on the Website when one or more ancillary fees were added, increasing the final total cost to an amount greater than the initially displayed ticket price.

60. While the opening screen may have provided that "an order processing fee of up to $3.95 may be added to each order" (amount varying with event), such statements do not comply with New York Arts & Cultural Affairs Law § 25.07. Any such reference does not comply with § 25.07, *inter alia*, as (1) through use of the word "may", the reference to the order processing fee is presented as an uncertainty, when Defendants, who control and

program the Website, already know that it will be imposed, but do not include the ancillary fee in the listed ticket price; (2) "the total cost of the ticket, inclusive of all ancillary fees" must be listed on the opening ticket listing screen; (3) "the price of the ticket shall not increase during the purchase process", and; (4) the reference is in small in descript text, in contrast to the ticket price which is prominently featured in larger, bold and colored font to stand out and be far more noticeable to the consumer.

61. Recent cases in New York federal courts have upheld similar claims made against other company defendants. *See*, *Vassell v. SeatGeek, Inc.,* 2025 WL 240912, *12 (E.D.N.Y., Jan. 17, 2025) (denying motion to dismiss because "plaintiffs suffered economic harm as a result of defendant's alleged unlawful failure to disclose 'the total cost of the ticket… in a clear and conspicuous manner' at the 'first point that ticket prices [were] displayed on their website."); *Berryman v. Reading International, Inc*., 2025 WL 315403 (S.D.N.Y., Jan. 28, 2025) (denying motion to dismiss even though defendant's website discloses the service fee on a page prior to the final "order confirmation" page because the fee was not disclosed prior to the ticket being selected for purchase, as required by § 25.07(4).).

62. In addition, since July 17, 2023 and continuing through the present, Defendants have failed to disclose, before tickets are selected for purchase, the fee breakdown in violation of NYACAL, §25.07(4).

63. Between August 29, 2022 and July 19, 2023, Ticketmaster used the following purchase flow for New York-venued events. During this period, on the initial ticket selection screen, consumers saw a subtotal price that included per-ticket fees (but not order processing fees) as well as a per-ticket fee breakdown in a parenthetical under that subtotal.







64. Defendants changed their purchase flow in July 2023. After July 19, 2023, Defendants continued to display a subtotal price that did not include order processing fees, but stopped disclosing the per-ticket fee breakdown. Thus, between July 19, 2023 and May 12, 2025, the purchase flow for orders with order processing fees was as shown below.




65. The per-ticket fee breakdown was not disclosed on the initial ticket selection screen, nor was it disclosed in a "clear and conspicuous manner" on the second page. Only by clicking on the caret symbol (^) next to the "subtotal," could the consumer find the fee breakdown showing the portion of the total cost attributable to per-ticket and per-order fees.

66. Ticketmaster eliminated order processing fees and began displaying the total cost including all fees on May 12, 2025, following the F.T.C.'s issuance of a rule requiring all ticketing platforms display the "all-in" price of tickets to live events. But to this day, Ticketmaster does not disclose the fee breakdown before tickets are selected for purchase—instead, after selecting a ticket for purchase and moving to a subsequent screen

in the purchase flow, a consumer must click on the caret symbol (^) next to the "subtotal" to find the fee breakdown. Such conduct is an ongoing violation of the NYACAL.

67. The fees charged by Defendants were unlawful because they were not disclosed as required by NYACAL. By failing to disclose the fee breakdown on the initial ticket selection screen as required, Defendants have been able to charge Plaintiffs and members of the Class more money, have generated more sales and revenue for Defendants, and have caused Plaintiffs and members of the Class financial loss.

## CLASS ALLEGATIONS

68. Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated as a class action pursuant to Fed.R.Civ.P. 23 and any other applicable rule of civil procedure. Plaintiffs seeks to represent the following putative class:

> All residents of the United States who purchased tickets through Defendants' Website(s) to an event venued in New York state, and were charged one or more ancillary fees that were (1) not included in the total price and/or (2) were not included in a fee breakdown listed on the initial ticket selection screen for the event on the Website(s), during the Class Period.

(the "Class").

69. The "Class Period" beings on August 29, 2022, and continues through August 11, 2025.

70. Specifically excluded from the Class are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record in this case and their employees.

71. Plaintiffs reserve the right to amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues.

72. This action may be certified as a class action under Fed.R.Civ.P. 23(a), 23(b)(2) and/or 23(b)(3), and/or any other applicable rule of civil procedure, because it

satisfies all requirements of rules governing class certification including any numerosity, commonality, typicality, adequacy, predominance, and superiority requirements.

73. Numerosity. The Class's members are so numerous that joinder of each individual class member would be impracticable and unfeasible, and the disposition of their claims as a class will benefit the parties, the Court, and the interests of justice. Upon information and belief, Defendants sell approximately 500 million tickets per year in the United States. Defendants likely sell 30 million or more tickets to events venued in New York State each year. The Class contains tens of thousands of individuals who purchased tickets for events that were venued in New York state. The precise number of the Class Members should be readily available from a review of Defendants' business records but is expected to exceed 5,000 persons.

74. Ascertainability. The proposed Class is ascertainable from objective criteria. Specifically, on information and belief, Defendants maintain business records, which include the names, contact information, e-mail addresses and other identifying information of members of the proposed Class, from which all members of the Class could be notified. Among other things, in order to purchase tickets on the Websites, Class members must establish an online account with Defendants. On information and belief, Defendants maintain sales records for account holders that show the ticket prices and ancillary fees charged on ticket transactions made within the Class Period, including the identity, address, and e-mail address of the purchaser. All Class members are persons with Ticketmaster and/or Live Nation accounts.

75. Commonality and Predominance. There is a well-defined community of interest among the Class Members and common questions of both law and fact predominate over questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants failed to disclose the total cost of the ticket to Class Members, including all ancillary fees, on the initial ticket

selection screen, prior to the tickets being selected for purchase in violation of New York Arts & Cultural Affairs Law § 25.07(4);

b. Whether the displayed price of Defendants' tickets increased during the Class members' purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4);

c. Whether Defendants failed to disclose all service charges and ancillary fees to members of the Class in a clear and conspicuous manner on the initial ticket selection screen in violation of New York Arts & Cultural Affairs Law § 25.07(4); and

d. The relief due to members of the Class, including statutory damages and injunctive relief.

76. Typicality. Plaintiffs' claims are typical of those of the Class Members in that they arise out of the same course of conduct of Defendants, who have policies and practices of unlawful pricing that violate § 25.07(4). Plaintiffs' claims are further typical in that Plaintiffs seek the same relief as all other Class Members and under the same theories of recovery. The effort Plaintiffs undertake to pursue their own claims will significantly benefit the Class Members because of the identical nature of the issues across the Class. Unless corrected and enjoined, Plaintiffs, like other Class members, remain at risk of further violations of the practices described.

77. Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs share a common interest with the Class Members, with respect to the conduct of the Defendants herein and redress of injury. Plaintiffs have suffered an injury-in-fact as a result of the conduct of the Defendants, as alleged herein. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex consumer fraud and class actions. Plaintiffs and their counsel intend to prosecute this action vigorously and faithfully for the benefit of the Class Members. Plaintiffs have no interests contrary to the Class Members, and will fairly and adequately protect the interests of the Class.

78. Community of Interest. The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiffs have claims typical of the Class Members.

79. Superiority. The certification of the Class in this action is superior to the litigation of a multitude of cases by members of the putative Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are members of the Class who are unlikely to join or bring an action due to, among other reasons, their reluctance to spend large sums of time and/or money to recover what may be a relatively modest individual recovery. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received. The damages and other potential recovery for each individual member of the Class are modest relative to the substantial burden and expense of individual prosecution of these claims.

80. A class action is also superior because Defendants' common Terms of Use (effective date July 2, 2021)[6] that was in effect when class members' claims accrued, contain a common arbitration clause which has been found to be unconscionable and unenforceable. See Heckman v. Live Nation Entertainment, Inc., 120 F.4th 670 (9th Cir. 2024). The Court in Heckman further confirmed that Defendants' arbitration clause did not contemplate bilateral arbitration for consumers, was not preempted by the FAA and therefore California's Discovery Bank rule prohibiting class action waivers applied. Id. at 689 ("We also hold, based on an alternate and independent ground, that the application of California unconscionability law to the arbitration agreement at issue here is not preempted

[6] Found at https://help.ticketmaster.com/hc/en-us/articles/10468830739345-Terms-of-Use?_gl=1*1d9abe0*_gcl_au*NjEzNDAzNjQ1LjE3MzM1MDMwNDk.*_ga*MjEzNjU3Njk4MS4xNzE2NTgyNzM5*_ga_C1T806G4DF*MTczODYyMzc1NS45NC4xLjE3Mzg2MjY3MjIuMjAuMC4w*_ga_H1KKSGW33X*MTczODYyMzc1NS44Mi4xLjE3Mzg2MjY3MjEuMjEuMC4w&_ga=2.192195242.1662087761.1738606630-2136576981.1716582739 . (last accessed February 3, 2025)

by the FAA. We agree with our concurring colleague that the FAA simply does not apply to and protect the mass arbitration model set forth in Ticketmaster's Terms and New Era's Rules. Because the FAA does not apply, the rule of Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), governs the case before us. In Discover Bank, the California Supreme Court held that class action waivers in consumer contracts of adhesion are unconscionable under California law. Id., 30 Cal.Rptr.3d 76, 113 P.3d at 1110).")

81. In the alternative, the above-referenced Class may be certified because:

a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the Class who are not parties to the adjudications, or which would substantially impair or impede the ability of other members to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

## FIRST CAUSE OF ACTION

Violation of the New York Arts & Cultural Affairs Law § 25.01 et seq.

82. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

83. Plaintiffs bring this claim individually and on behalf of all members of the Class.

84. Defendants engaged in the above-described practices during the Class Period which caused injury and loss to Plaintiffs and the Class.

85. At all times during the Class Period, Defendants sold tickets to events venued in New York state on their online Websites and platforms to consumers throughout the United States, including members of the Class, in a common manner where all ancillary fees (including but not limited to order processing fees, service fees, delivery fees, order processing fees, facility fees and/or other fees) were not fully disclosed by Defendants on the first Website screen offering the tickets at a specific selling price. Instead, Defendants only disclosed the ancillary fees being added to the final price on subsequent Website screens and/or disclosures. Distinct violations of New York Arts & Cultural Affairs Law § 25.01 et seq. resulted from each ticket sold to Class members in this manner.

86. Pursuant to New York Arts & Cultural Affairs Law § 25.07(4), both Defendants operate "platform[s] that facilitates the sale or resale of tickets." This includes the Websites.

87. Pursuant to § 25.07(4), Defendants have a statutory obligation to "disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser" at the first point that ticket prices are displayed on their website.

88. Defendants, through their failure to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" until after a ticket is selected for purchase, have violated New York Arts & Cultural Affairs Law § 25.07(4) with respect to each ticket sale by Plaintiffs and members of the Class during the Class Period that had an order processing fee or other per transaction fee.

89. Moreover, Defendants violated § 25.07(4) by increasing the total cost of tickets during the purchase process with respect to Plaintiffs' and each Class members' ticket purchase(s) to an event venued in New York state that involved order processing fee charges.

90. Furthermore, Defendants violated New York Arts & Cultural Affairs Law § 25.07(4) by failing at the first stage to "disclose in a clear and conspicuous manner the

portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser."

91. Defendants' added "fees", including but not limited to the order processing fee, constitute an "ancillary fee[] that must be paid in order to purchase the ticket." § 25.07(4).

92. Plaintiffs and members of the Class purchased tickets to events venued in New York state through Defendants' Websites and were forced to pay one or more of Defendants' added ancillary fees, including order processing fees, in order to secure their tickets. The ancillary fees imposed by Defendants were mandatory charges imposed by Defendants and not subject to individual negotiation. Plaintiffs and the Class were harmed by paying at least one added ancillary Fee charge that was not disclosed to Plaintiffs at the beginning of the purchase process, which is deceptive conduct and unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4). Defendants' above-described conduct injured and damaged Plaintiffs and each member of the Class each time they purchased a ticket to an event venued in New York during the Class Period.

93. Indeed, this is precisely the type of pricing deception the statute was designed to prevent. The Division of Licensing Services, in response to an inquiry from ticketing websites about the scope of the statute, stated clearly that "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices" and that "[f]rom the moment the prospective purchaser assesses the… ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself."[7]

94. Plaintiffs, on behalf of themselves and the Class, seek to enjoin the unlawful acts and practices described herein; to recover monetary relief including statutory damages of fifty dollars per violation; to recover reasonable attorneys' fees and costs; and for all other relief that is just and equitable under the circumstances and allowed by law. See N.Y. Arts & Cult. Aff. Law § 25.33.

[7] *See* N.Y. Dep't of State, Div. Licens. Servs., Request for Additional Guidance – New York State Senate Bill S.9461, (Oct. 24, 2022).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly aggrieved persons in the Class, pray for judgment against Defendants as follows:

1. For an order pursuant to Fed.R.Civ.P. 23(a), 23(b)(3) and/or 23(b)(2) certifying that the action may be maintained as a class action on behalf of the above-defined Class (or alternatively, a class as defined by the court) and appointing Plaintiffs and their undersigned counsel to represent the Class in this litigation;
2. For an order declaring that the acts and practices of Defendants constitute violations of the statute referenced herein and enjoining such practices;
3. For an order finding in favor of Plaintiffs and the Class;
4. For monetary relief, including statutory damages in amounts to be determined;
5. For prejudgment interest on all amounts awarded;
6. For injunctive relief as pleaded or as the Court may deem proper;
7. For an award of reasonable attorneys' fees and costs; and
8. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of their individual and Class claims to the extent authorized by law.

Respectfully submitted,

**ZIMMERMAN REED, LLP**

Date: July 17, 2026 By: /s/ Hart L. Robinovitch

Caleb Marker
caleb.marker@zimmreed.com
Jessica Liu
jessica.liu@zimmreed.com
6420 Wilshire Blvd., Suite 1080
Los Angeles, California 90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781

**ZIMMERMAN REED LLP**

Hart L. Robinovitch (*pro hac vice*)
hart.robinovitch@zimmreed.com
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ 85254
(480) 348-6400 Telephone
(480) 348-6415 Facsimile

**ZIMMERMAN REED LLP**

Finnuala K. Tessier
finnuala.tessier @zimmreed.com
25568 Genesee Trail Rd
Golden, CO 80401
Telephone: (877) 500-8780
Facsimile: (877) 500-8781

*Attorneys for Plaintiffs*